# Amos R. Harlow v. The Lake Superior Iron Company.

*Landlord and tenant: Mines.*   A lessee of lands for years is entitled to work an open mine upon the premises, unless restricted by the terms of his lease; but he has no right to open a new mine, unless this privilege be expressly granted.

*Lease: Construction: Intention: Entire instrument.*   In construing a written lease, it is contrary to well settled rules of construction to give it a narrow and technical interpretation based upon some particular word or clause; the intent must be gathered from an examination of the instrument as a whole, and such a construction must be put upon it, if possible, as will render all its clauses consistent and harmonious.

*Mining privilege: Particular use: Possession: Lease.*   The lease in question in this cause is construed to be, not a lease of the lands, with the privilege of mining thereon, or together with the ore and minerals to be found upon the same, but a grant of a specific mining privilege, particularly set forth in the lease, in such manner as to exclude all other uses to which the lessee might otherwise have been entitled to put the premises; and to confer no right to the use or possession of the lands for any purpose whatever except as an incident to the mining right granted and in connection with the exercise of that right.

*Lease: Use of premises for agricultural purposes: Right of possession.*   The provision in the lease, reserving to the lessor the use for agricultural purposes of all the premises not needed for mining purposes, is inconsistent with an intent to grant an ordinary leasehold interest.

*Lease: Mining right: Incorporeal interest: Possession: Ejectment.*   Under a lease granting an undivided interest or right to enter upon the premises and open and work such mines as the lessee might deem proper, with the further right to appropriate to his sole use and benefit all ores and minerals procured by him, and the right to obtain wood for the purposes aforesaid, to erect and maintain buildings suitable and needful for the business, the right of the lessee in the premises, until actual possession of some part thereof has been taken, is floating and indefinite, a mere incorporeal right, which is not capable of enforcement by an action of ejectment.

*Lease: Construction: Agreement to sell to lessee, etc.*   The provisions in the lease whereby the lessor agrees not to sell, assign or encumber the undivided interest leased without giving the lessee or his assigns the first refusal to purchase the same, and in case of division to give the lessee, his heirs or assigns the first refusal to purchase the divided half, and gives the lessee the right to have the land divided, are held not inconsistent with the construction put upon the lease by the court.

*Mining right: Undivided half: Assignment: Indivisible interest.*   The right leased, being that of an undivided half, gave the lessee the right to prospect over the entire lands and open and work as many mines as he deemed proper; and this right he could undoubtedly assign or convey to a copartnership or corporation; but he could not carve it up and parcel it out into several distinct rights, to be held and operated by more than one person, company or corporation; his right, being a single one,

could not be subdivided; and a similar undivided right remained vested in the lessor.

*Heard January 18.    Decided April 4.*

Error to Marquette Circuit.

*F. O. Clark, Ball & Owen, Daniel Goodwin* and *John Van Arman,* for plaintiff in error.

The lease, although containing several provisions of a very unusual character, was intended to and does convey the undivided one-half of the land itself, and not a mere mining right.

The demise is of the undivided half of a quarter section of land, and the language in which it is expressed is entirely unequivocal, and the subsequent provision, by which the lessor binds himself not to sell or encumber the interest thereby leased until the lessee had first been allowed the privilege of purchasing "said undivided one-half," and granting the lessee the right at any time during the lease to have said land divided, or purchase the same undivided, and also providing that in case the parties, lessor and lessee, should be unable to agree upon the manner of such division of said land, or the terms of such purchase, that appraisers should be mutually chosen to decide in relation to such division or purchase, or both, are conclusive evidence of the intention and understanding of the parties.    As between the lessor and lessee of the undivided one-half of the land, these provisions are reasonable and practicable, but not one of them, except possibly that whereby the lessor binds himself not to sell or encumber the interest leased unless the lessee is first allowed the privilege of purchasing said undivided one-half, is either sensible or even practicable when applied to the lease of a mere mining right.   And even this provision, giving the lessee the preëmption or first right to purchase the undivided one-half of the land, although not necessarily inconsistent with the demise of the mere mining right, is expressed in language which strongly indicates the understanding and intention of the lessor to convey the undivided one-half of the land by this lease.   .

The lease not only contains the usual language employed in a lease of the land, but also a provision, expressed in clear and unequivocal language, giving to the lessee the right at any time during the term of the lease to have a division of the quarter-section of the land itself between the lessor and lessee; and to render the right thus conferred on the lessee available

without expense or delay, a mode of making such partition without resort to legal proceedings is carefully provided. Now as between a lessor and lessee of the undivided one-half of the land, such a provision is practicable; but as between two persons, one of whom is the owner of the land, and the other of whom has no estate or interest therein, this provision is utterly impracticable; for in such case there could be no division consistent with or corresponding to the rights of the parties. Even if one of the parties were possessed of a mining right, such as that conveyed by this lease, but no interest in or share of the land, no such partition as is here provided for would be practicable consistently with the respective rights of the parties; for it is a partition of the land (said quarter-section) which is expressly provided for, and therefore, even if the mining right described in the lease were capable of division, no such division is authorized or referred to in the lease.

It is impossible to construe this lease as the lease of an easement only, and not a demise of the land. From a careful examination of its different provisions, it is the manifest intention of the parties to create a tenancy in common between the lessor and lessee in the land, and then regulate the rights of each of said tenants in relation to the use which each shall enjoy thereof during such tenancy in common. And the provisions of the lease in relation to the separate use of the land, are not inconsistent with the joint ownership or tenancy in common.

The statement of the purpose of the lease does not prevent the land from passing thereby.—2 Washb. on R. P. (4th ed.), 300; Chatham v. Brainard, 11 Conn., 90; Coburn v. Coxeter, 51 N. H., 166; Scallin v. Brown, 4 B. & C., 485; Coke Litt., 4 b.; Stuyvesant v. Mayor, etc., 11 Paige, 414; Casselton v. Langdon, 11 Vt., 217; De Forest v. Brown, 1 Hilton, 43.

In construing a contract it is proper and often necessary, not only to consider the various provisions and stipulations of the contract itself, but also the situation of the subject matter of the contract and the interests of the parties therein.—Wilson v. Troup, 2 Cow., 195; Sumner v. Wilson, 8 Mass., 214; Fowler v. Bigelow, 10 Mass., 379; Hopkins v. Young, 11 Mass. 302; Howland v. Leach, 11 Pick., 134; Hollingsworth v. Fry, 4 Dall., 345; Shultz v. Johnson, 5 B. Mon., 497.

The main and controlling principle adopted by courts in the construction of written contracts, whether under seal or resting in parol, is to so read and construe them as to carry into effect the actual purpose and intention of the parties; indeed, the intention of the parties, as indicated by the

terms and provisions of the contract, and as derived from a careful consideration of all parts thereof, in contemplation of law constitutes the contract.—*Knowles v. Emerson, 9 Pick., 422; Wheelock v. Turner, 19 Pick., 167; Heywood v. Perrin, 10 Pick., 230.* The first and paramount rule of construction of contracts is to make them speak the intention of the parties as gathered from the contract and the entire transaction. Other rules are subservient to this, and whenever they contravene it, are to be disregarded.—*Gray v. Clark, 11 Vt., 583; Kelley v. Mills, 8 Ham., 525; Patrick v. Grant, 2 Shep., 233.*

The reservation in said lease for agricultural purposes is a reservation in the proper and technical sense, and therefore remains inoperative until possession taken by the lessor under it, or if considered as an exception from the thing demised, it is void for uncertainty.—*Shep. Touchstone, 78; Doe v. Lock, 4 N. & M., 807; 4 Kent Com. (10th ed.), 568, (12th ed.), 468.*

For the distinction between exception and reservation, see *Thompson v. Gregory, 4 Johns., 81; Provost v. Calders, 2 Wend., 517; Dygert v. Mathews, 11 Wend., 35; Stoll v. Wilson, 42 Me., 21; Coke Litt., 47a; Craig v. Wells, 11 N. Y., 321; Ives v. Van Auken, 34 Barb., 566.*

*W. P. Healy, G. V. N. Lothrop, C. I. Walker,* and *J. J. Storrow,* for defendant in error.

These things are, we believe, perfectly distinguished in law: (1) Ownership of, and full dominion over the land, *ab inferis, usque ad coelum,* either in fee or for years: *2 Black. Com., 18;* (2) Ownership of the stratum of minerals below the surface of the land, as distinguished from the ownership of the whole land: *Bainbridge, 4, 5, 33, 36; Wilkinson v. Proud, 11 M. & W., 39; Caldwell v. Fulton, 31 Penn. St., 475;* (3) Ownership of a mine already opened and existing in the land of another: *Bainbridge, 33, 130, 497-8-9;* (4) A mere right to enter, search for, dig and raise minerals, and thus acquire the ownership of the minerals so dug and raised: *Bainbridge, 117, 261, and cases hereinafter cited.*

The *first* imports exclusive possession and enjoyment of the whole; the *second* imports like possession and enjoyment of a defined stratum of the whole, beneath the surface; the *third* imports like possession and enjoyment of that portion of surface and substratum actually included within the mine and its works. All these are rights in land, which can be properly described, both in extent and estate, and will sustain eject-

HARLOW v. LAKE SUPERIOR IRON CO.

ment; each implies present ownership and possession of a physical thing, which one may hold alone, in common, in fee, or for years. But the *fourth* is a mere right. The grant of it does not describe any thing in or on the land which a surveyor or sheriff can find, or take, or give possession of. In the grant the right is floating. But when the grantee, in the exercise of his right, finds, digs and raises minerals, they thereby become appropriated in ownership. They become his own chattels. In law his right by the grant is an incorporeal hereditament. By the exercise of it he severs minerals from the land and makes them his own. But the mere right is one for which ejectment does not lie.—*Tyler 37, 41; Rowan v. Kelsey, 18 Barb., 484; Child v. Chapel, 9 N. Y., 246.*

But the grantee in the exercise of this right may, and usually must, establish and open a mine. This fixes an absolute possession, the enjoyment of which is necessarily exclusive. When possession is thus annexed to his right, he has an interest which may be vindicated by ejectment, until he abandons such possession. His occupation, united with his right, defines and bounds an interest in land which the sheriff can take and give possession of.

This right, with respect to a particular tract of land, may be granted and enjoyed (besides those divisions which depend on length of time) in two ways: (1) It may be held by two as tenants in common; in which case each is entitled to an equal and common enjoyment of the mine and its works, and of the minerals raised; and each is liable to account to the other for the profits of the mine; (2) Or the grant may be to A, not exclusive, and of a similar right to B; in which case each, at his own cost and risk, and in his own way, may open and work a mine, having exclusive possession and owning exclusively what he raises; or the grantor may grant a right to A, not exclusive, retaining a similar right to himself.

In the first case, that of a grant to two in common, their rights, *inter sese*, are determined by the principles which govern the relations of tenants in common. In the second case the parties are governed by those rules which apply to rights independent in law, and possibly conflicting in exercise. It then falls to the courts so to restrain and regulate the exercise of these rights, that while each shall have a substantial and profitable enjoyment for himself, neither shall unjustly impair the proper enjoyment of the other.

These doctrines are fully considered and established in the following cases: · *Washburn on Easements, p. 14; Beatty v. Gregory, 17 Iowa, 116, Dillon, J.; Bainbridge on Mines, 494 (302*

of Eng. ed.); Doe v. Wood, 2 B. & Ald., 724; Wilkinson v. Proud, 11 M. & W., 39; Union Petr. Co. v. Bliven Petr. Co., 72 Penn., 181; Funk v. Haldeman, 53 Penn., 247; Grubb v. Bayard, 2 Wall. Jr., 81; Karns v. Tanner, 66 Penn., 307.

It is true that a grant of all the use or profit of a thing is sometimes held to be equivalent to a grant of the thing itself, but only when the grant is absolutely without limitation or stint, never where there is a limitation of time, nor where the grant is not exclusive of the grantor and all other persons: Chetham v. Williamson, 4 East, 469.

It is clear that the lease in question was neither of the second or third things above described; neither a grant of a stratum of minerals below the surface, nor of a mine existing.

It must therefore be either of the first or fourth class of our subdivision.

It is not of the first. If it were, it is clear that the only subdivision of cotemporaneous enjoyment would be that of tenants in common. This is what the plaintiff claims. And he admits that the defendant has a common right to the beneficial enjoyment of the premises with himself. It thus follows, in such case, that if one such tenant has gone to enormous expenses in sinking shafts, exploring and erecting works, the other may sit by and escape any share of the expense if the enterprise fails; while, if it is a success, he may come in and claim his share: Carpenter v. Webster, 27 Cal., 525; Bennett v. Clemence, 6 Allen, 10.

Such a result is so prejudicial to mining enterprise, that courts will not so construe grants, unless required so to do by the plain meaning of the words used. Instances are found where grants made when the subject was of small value, are construed one way or the other according to the bearing which such construction would have on a great industry of the state: Ashley v. Peere, 18 Pick., 276; Tourtelotte v. Phelps, 4 Gray, 374.

It is true that a portion of the words of this instrument are broad enough for an ordinary demise of an undivided half of the quarter section. But a writing is to receive its construction from a survey of the whole instrument, and not from any detached part of it. Especially is this true when the writing, as in this case, was evidently the work of unskilled persons. Here the general words first used are expressly limited in their operation by the residue of the same sentence; the only purpose of the grant being for the mining of iron ore and other minerals, and of such privileges as were essential to make such mining productive and profitable. This

HARLOW *v.* LAKE SUPERIOR IRON CO.

intent is made still more clear by the next clause giving to Graveraet the "right to appropriate for his *own sole use all ores and minerals procured from said lands during the term of said lease.*" This clause, while throwing the clearest light on the true meaning of the parties, at the same time strikingly shows their want of skill and precision in expression. In terms it gives to Graveraet sole right to *all* the ores and minerals mined on the lands during the whole term; while it is obvious that it must be limited to such as should be mined by or under himself.

And now the closing declaration made by the parties, in further explanation of their meaning, that the grant was not to extend to the surface of the land, except so far as was needed for mining purposes, and as it seems to us the demonstration is complete.

It is also worthy of notice that there is neither habendum nor re-entry clause in the instrument. This shows, as already said, that the writing lacks professional form and precision; and also that the grantor did not intend to part with the absolute possession as under an ordinary lease.

The provision for Briggs retaining the use of the land till sold, for agricultural purposes, saving what is needed for mining purposes, is not a "reservation." It does not by a reservation take back something previously granted. It is clearly a further declaration of the parties, used to make certain the meaning and effect of the previous words.

The right disclosed by the declaration is of a tenancy in common of a term of years, in the whole land. But this does not conform to the grant in any of its essentials. The primary intent of the grant, however construed, was for mining purposes on land as yet wholly unworked. Yet an ordinary tenant for years cannot open new mines: *Rogers on Mines, 170, 266, 288.*

And the right to do so is never an "appurtenance," but a substantial interest in itself; must be granted by appropriate words, and when the owner brings action respecting it, he must declare for it and prove it. Again, if recovery could be had under plaintiff's declaration, he would recover his aliquot share in the entire land and premises as it now stands; he must be put in possession jointly and in common with us of all our mines and works opened and built by us at such vast cost: *Carpenter v. Webster, 27 Cal., 525; Bennett v. Clemence, 6 Allen, 10.* Still more. He would be entitled to recover, as profits, one-quarter of all the ore raised by us during the period for which profits may be recovered.

Now, as we have said, a construction which leads to such results will be adopted only when the terms of the writing are imperative. It will not be adopted when the whole object of the writing can be effected by a different construction, and at the same time great wrong and hardship to other parties avoided.

From what we have said we think it plainly appears that whatever may be the interest of plaintiff, it is not that of a tenant in common, as set up in his declaration.

We believe we have shown that this is neither a plenary grant of land, nor of a stratum of minerals below the surface of land, nor an existing mine. But there is another right respecting mineral lands which is clearly recognized and defined in law. And this grant, we insist, belongs to this last class of rights. It is defined as a right or license to enter on lands, search for, dig and take away minerals. As incident to this right the grantee may open mines, build mining works, and operate the same on the land. Until there is an actual location on the land, in the exercise of the right, it is merely a right incorporeal, and will not sustain an action of ejectment. After an actual location, the union of the right with a local possession gives a definite and tangible interest in the land itself, which may be vindicated by ejectment: *Bainbridge, 261, 267, and 246, 498–9; Tyler on Eject., 41–2; Lord Mountjoy's Case, 4 Leon., 147; Chetham v. Williamson, 4 East, 469; Doe v. Wood, 2 B. & Ald., 724; Norway v. Rowe, 19 Ves., 157; Grubb v. Bayard, 2 Wall. Jr., 81; Clement v. Youngman, 40 Penn., 341; Brandt v. McIver, 18 Penn., 70; Caldwell v. Fulton, 31 Penn., 476; Funk v. Alderman, 53 Penn., 229; Union Petr. Co. v. Bliven Petr. Co., 72 Penn., 173; Stockbridge Co. v. Hudson Co., 107 Mass., 322; Beatty v. Gregory, 17 Iowa, 116; Jackson v. May, 16 Johns., 184.*

When the right has not become so fixed or localized on the land, redress for any injury in respect to the right is entirely different. Thus, if the right is denied, the proper redress is by action on the case, or by bill in equity. Now, this right to enter and search for minerals, to dig and carry away as his own sole property all he shall raise, is, we think, the precise right granted by Briggs to Graveract. This view gives precisely what was sought to be secured by the writing, and it is the only construction which fits the entire writing, and which is consistent with the rights of all parties.

It may be proper again to observe here, what has already been noted, viz.: that the right here granted to take and appropriate minerals is not an "exclusive" one, as it is called in

the books. That is, it does not preclude the grantor from exercising a like right, or granting to others a like right in said land. On this point see *Bainbridge, 269, 270, and cases cited; Chetham v. Williamson, 4 East, 479; Grubb v. Bayard, 2 Wall. Jr., 97; Carr v. Benson, L. Rep., 3 Ch. App., 524: Stockbridge Co. v. Hudson Co., 107 Mass., 322.*

MARSTON, J:

Plaintiff in error, claiming to be owner of an undivided one-fourth leasehold interest, for ninety-nine years from and after Sept. 28, 1850, in the southwest quarter of section ten, township 47 north, of range 27 west, in 1875 brought an action of ejectment to recover possession thereof.

Upon the trial, to maintain the action, he introduced in evidence:

*First,* A certified transcript of articles of incorporation, dated February 21, 1853, whereby the defendant became a body corporate;

*Second,* Original articles of copartnership of the Marquette Iron Company;

*Third,* A copy of a patent, dated December 1, 1851, of the lands in question, from the United States to Isaiah Briggs.

He also introduced certified copies from the records of of the following instruments:

*Fourth,* A lease from Isaiah Briggs to Robt. J. Graveraet;

*Fifth,* An assignment of the same by Graveraet to the Marquette Iron Company; and,

*Sixth,* A deed from said Graveraet to Amos R. Harlow and Waterman A. Fisher, whereby said Graveraet did "recede and retire" from the partnership known as the Marquette Iron Company, and did thereby yield, quit-claim and forever release to said Fisher and Harlow all rights, claims and titles, legal or equitable, to the property and effects, both real and personal, of said company, excepting certain property not affecting the lands in question.

The plaintiff farther introduced evidence tending to prove

36 MICH.—15.

that he took possession of the property in question in February, 1857, and erected a log house thereon, and remained in possession thereof about six weeks; that on returning to the premises in October following he found the defendant in possession, and that his right therein was disputed. It also appeared that Edward Clarke died in August, 1849. Having rested, the defendant's counsel moved the court to strike out and exclude from the evidence introduced:

*First,* The lease from Briggs to Graveraet;

*Second,* The assignment thereof to the Marquette Iron Company;

*Third,* The deed from Graveraet to Harlow and Fisher of the partnership assets of the Marquette Iron Company; because

*First,* They were not admissible under the declaration;

*Second,* The assignment was void and could vest no title in the Marquette Iron Company, said company being a copartnership and not a corporation; and

*Third,* If any interest was vested in the plaintiff it was as a partner; and it not appearing that the affairs of the partnership had been settled, plaintiff could not maintain ejectment thereon.

The motion was granted, and no other evidence having been introduced, the court directed the jury to return a verdict for the defendant, and to all of which, counsel for plaintiff excepted. A verdict and judgment having been rendered for the defendant, the plaintiff brings the case here for review upon writ of error.

The copartnership known as the Marquette Iron Company, when formed, was composed of Waterman A. Fisher, Edward Clarke, Amos R. Harlow and Robert J. Graveraet. Clarke died in 1849, and Graveraet withdrew therefrom in August, 1852. While it appears from the record that the Marquette Iron Company did carry on business for some time after its formation, it does not appear that any thing was done by it, under the Briggs lease, upon the lands in dispute. A number of questions growing out of the rela-

tions of the plaintiff with the Marquette Iron Company, similar to those raised in the court below, were elaborately discussed upon the argument. We do not, however, deem it necessary to consider them, as the view we take of this case upon a construction of the lease, is, we think, decisive of the present action.

Conceding, for the purposes of the present case, that the plaintiff has shown in himself an undivided one-fourth interest under the lease, and his right to maintain an action of ejectment therefor, which, to say the least, is very doubtful, let us turn to that instrument and ascertain from it, examined as a whole and in the light of the circumstances existing and known to the parties at the time of its execution, what rights the lessee acquired thereunder. A copy of the lease is given in the margin. It is not claimed that the rights then granted have since, either by construction of the parties, possession of the premises thereunder, or otherwise, been enlarged, although the plaintiff's interest therein may have been increased by the death of Clarke and the deed from Graveraet.

"Know all men by these presents, that, whereas, I, Isaiah Briggs, of Marquette county, state of Michigan, have this day obtained a pre-emption to, and have paid the full consideration to the receiver of the land office at Sault Ste. Marie, for the quarter section of land lying in Marquette county and state of Michigan, known and described as the southwest quarter of section ten (10), in township forty-seven (47) north, of range twenty-seven (27) west, to which a full title will be perfected: Now, in consideration of five hundred dollars, to me paid by Robert J. Graveraet, of Marquette county and state aforesaid, receipt whereof is hereby confessed, I do hereby let and lease to said Robert J. Graveraet, his heirs or assigns, the equal undivided one-half part of said southwest quarter of said section ten (10), in said township and range, for the full end and term of ninety-nine years from and after the date of these presents, fully to be complete and ended, for all the purposes of mining of iron ore and other minerals, and for all the business of said mining, obtaining ore, roasting the same, obtaining wood for said purposes, erecting and maintaining buildings suitable and needed for said business and calling, and for all purposes of making the mining interest on said land productive and profitable, and granting to said party the right to appropriate to his own sole use and benefit all ores and minerals procured from said land during the term of said lease; and further, I hereby agree and bind myself not to sell, assign, or encumber said undivided interest hereby leased, unless said Graveraet, his heirs or assigns, shall have the first refusal to purchase said undivided one-half, or if said quarter section be divided,

It is unnecessary to attempt to define or even to discuss in this case all the rights which a lessee of wild lands would have in this state. We may, however, for the purposes of this case, consider the law as settled, giving to a lessee of lands for years the right to work an open mine upon the premises, unless restricted by the terms of his lease; and it is also equally well settled that he would not have the right to open a new mine, unless the right so to do was expressly granted. Such, it is said, are the general rights of lessees of lands in which there are minerals.—*1 Wash.*, *412*.

It is not claimed that there was an open mine upon the premises in dispute at the time the lease was executed, and while one of the chief objects in view, if not the only one, was to grant, on the one part, and acquire on the other, certain mineral rights, defendant insists that but a mere right to enter, search for, dig and raise minerals, with the right of ownership of the minerals thus raised was granted, and that for such a right ejectment will not lie. The plaintiff claims that the lease from Briggs to Graveraet was intended to and did lease an undivided one-half of the land itself for the period therein mentioned and for the purpose therein stated.

---

then that said Graveraet, his heirs or assigns, shall have the first refusal to purchase said divided half, on terms to be agreed on between the said parties or their representatives; and said Graveraet shall, on notice to said Briggs, have the right to have said land so divided, or to purchase the same as undivided at any time within this lease, by consent of said Briggs; and in case said parties cannot agree to a division, the price and terms of purchase, then each party shall select one disinterested person, and these two appraisers select a third who shall decide as to a division or purchase, or both; and the award of such appraisers shall bind the respective parties. It is, however, expressly understood that said Briggs retains the use of this land until sold to said Graveraet for agricultural purposes, saving what is needed for mining purposes as above written; and for a description to said quarter section it is known and described as "fractional quarter section;" and further, this lease is only operative after a confirmation of said pre-emption claim, and said Graveraet is to pay one-third of all taxes to be laid on said fractional quarter section during the term of said lease. This lease binds the heirs, administrators, executors and assigns of the respective parties.

"Signed and sealed at Sault Ste. Marie this twenty-eighth day of September, A. D. 1850."

It would not only be unjust but contrary to the well settled rules of construction to dispose of this case upon any narrow or technical view, based upon any particular word or clause in the lease. When we examine the entire instrument as a whole, we think there is no difficulty in arriving at a correct conclusion, one that will be in entire accord with the intention of the parties making it, in harmony with the surrounding circumstances then existing, and consistent with each and all the various provisions of the instrument itself. And while a consideration of some particular part, if standing alone, might point to a certain definite result, yet we must still recognize the fact that any such clause may be controlled by the connection in which it is used, or by other parts of the same instrument; and that the legal construction or conclusion arising from the entire instrument, may be entirely different from, or even contrary to, and at variance with, the conclusion which a part standing alone would seem to indicate.

The instrument at the outset purports to be a lease of the undivided one-half part of a certain description of land, and if it had gone no further, it is not at all likely that any question could have arisen thereon. This clause is, however, we think, controlled and limited by what follows. It is not a lease of the lands, with the privilege of mining thereon, or together with the ore and minerals to be found upon said lands, nor are there any words contained therein, indicating that this first clause is to be in any way added to, extended, or enlarged by what follows, or that any additional right is intended to be conferred and added thereto. That other rights, rights which the law would not have implied, viz. : to open mines and work them for the lessee's sole benefit, are granted, is clear, but they are not in the nature of additional rights and privileges, but are placed there to limit and define the nature and extent of the clause immediately preceding and of which they form a part.

When the right is thus defined in the lease, it is no longer a lease of the land, to be used by the lessee for

such purposes, within the limits allowed by law, as he might deem proper, but to be used for a particular specific purpose, so far as might be necessary to the successful accomplishment of that purpose, and for none other. A specific purpose having been thus set forth in the lease, excludes all others which the lessee might otherwise have been entitled to. This mining privilege might of course have been so expressed in the lease as to indicate clearly an intention to confer the same in addition to any and all other rights which the lessee, even without such a clause, would have had; but the language used in this instrument will not authorize any such enlarged construction. Had the lessee or his assignees entered into actual possession of the lands described in this lease, and upon examination ascertained that the mining interest thereon could not be made productive and profitable, and for that or any other reason have concluded not to engage in the business of mining thereon, could they have retained possession of the lands for any other purpose? Could they have taken any of the wood upon said lands and used it except in connection with the mining interests thereon? Could they have erected and maintained buildings thereon for any other purposes? In a word, could they have enjoyed any of the rights and privileges usually enjoyed by lessees under a lease of lands, in case they did not engage in and carry on the business of mining thereon? And if they did engage in and carry on the business of mining thereon, were not the purposes for which such lands could be used confined to such as would make the mining interest on said lands productive and profitable?

They had no right to a use of the land for any purpose except as an incident to the mining right granted. While engaged in mining, the lessees could use so much of the land as would be necessary for that purpose, but they could use it for no other. In case the mining business proved unprofitable and was abandoned or not carried on, then they were not entitled to the possession or use of the land for any purpose. In other words, if plaintiff's claim is cor-

rect, that the lease was one of lands, with the right of mining in addition thereto, then the result would be that they had a lease of lands without any of the usual rights or incidents pertaining thereto; they had a grant of land so limited as to make the grant itself of no effect, while the additional or mining right gave them, as a necessary incident, certain rights in the land. The additional privilege of mining gave them all their rights in the land, while the lease of the land itself gave them no rights whatever therein. It is almost needless to say that we cannot adopt the theory of the plaintiff.

The interest or right leased was an undivided one, and gave the lessee the right to prospect upon any part of the lands and open and work such mines as he might deem proper, with the further right to appropriate to his sole use and benefit all ores and minerals procured by him. He had also the right to obtain wood for said purposes, to erect and maintain buildings suitable and needful for the business. All these rights were expressly granted, and that the rights thus granted might be fully enjoyed, all necessary privileges in the land would pass as incident thereto.

What, then, is the extent of the lessee's interest in the land itself under such a lease? This must be determined from the extent of his mining operations. If he opened one or more mines and erected buildings suitable and needed for the business, it would seem that for such purpose at least, and perhaps others in connection therewith, he would be entitled to the exclusive possession of portions of the soil, and that an undivided half interest would not be sufficient for such purpose. And if it appeared in this case that the lessee or his assignees had entered upon the land, opened mines, erected buildings and in other ways taken actual possession of some definite parcel or parcels of the land, from which they had been ousted, and had brought their action to recover possession thereof, a different question would have been presented. But until actual possession of some part of the land is taken, their right therein is floating and

indefinite; it is a mere incorporeal right which is not capable of enforcement by an action of ejectment.—*3 Blackstone, 206; Tyler on Eject., 41, and cases cited.*

There are other provisions in this lease strongly corroborative of this view. The lessor expressly retains the use of all this land for agricultural purposes, "saving what is needed for mining purposes." There is nothing in the case tending to show that either now or at the time this lease was executed, these lands were capable of or could be used for any purpose other than mining or agricultural purposes. Even if they were, the fact that the lessor retains, for the entire term, their use for agricultural purposes, which would necessarily exclude their use by the lessee for any purpose except mining, shows that the lessee's interest in the land was a mere incidental one, dependent upon the mining right; and the clause relating to taxation favors the same view. It is, however, insisted by the plaintiff that the provisions in the lease by which the lessor agrees not to sell, assign, or encumber "said undivided interest hereby leased," unless the lessee or his assigns shall have the first refusal to purchase the same, or, "if said quarter-section be divided, then that said Graveraet, his heirs or assigns, shall have the first refusal to purchase said divided half," and also giving Graveraet the right to have the land divided, are all inconsistent with any view other than the one taken by the plaintiff. We see nothing in these several provisions inconsistent with the view we have taken, and the nature and extent of the interest leased called for the insertion of some such provisions in the lease to prevent disputes thereafter. At the time this lease was executed it was undoubtedly supposed that the lands described therein were valuable for mining purposes, but whether mining thereon would prove a profitable investment or not, was something that could not then be determined. Even if rich in minerals, large sums of money must be expended in prospecting, opening mines and developing its mineral resources. If it proved profitable the lessee would be anxious to have his tenure enlarged, and

rather than have an incumbrance placed upon the property, they provided that the lessee should first have the privilege of purchasing.

The right leased was that of an undivided one-half. This would give the lessee the right to prospect over the entire lands and open and work as many mines as he might have thought proper. This right he could undoubtedly have assigned or conveyed to a copartnership or corporation, giving it the same right. But he could not, we think, have cut and carved it into several distinct and separate rights, to be held and operated by more than one person, company or corporation. It was, we think, a single right, and could not be subdivided, although it might be owned and operated by a single body composed of several individuals.—*Caldwell v. Fulton, 31 Penn. St., 476.* Now the right granted by the lease being an undivided one-half, a similar right remained in the lessor. He or his assignees or grantees could also open and work mines upon this same property. And it is highly probable that if mining upon the property proved profitable, a conflict might arise between two individuals, companies or corporations, each owning an undivided half, with the right in each to appropriate to its sole use and benefit all ores and minerals it might procure from said land, and that a division to prevent such a conflict would be necessary. It was but reasonable therefore, and a wise forethought, to provide for a division of their rights, or even for a division and sale of the lands, and that in case of a contemplated sale, encumbrance, or division by the lessor, that the lessee should have the first privilege of purchasing. Such provisions are not inconsistent with, and could not enlarge the previous provisions of the grant.

That a right such as the one here granted is not exclusive, and does not preclude the lessor from exercising or granting a like right to others, see *Chetham v. Williamson, 4 East, 476; Stockbridge Co. v. Hudson Co., 107 Mass., 322; Union Petr. Co. v. Bliven Petr. Co., 72 Penn. St., 173.*

36 MICH.—16.

Looking then at the apparent intention of the parties as collected from the whole context of this lease, and at what was done under it, we are of opinion that the lessee acquired no such interest in the land as would enable him or his assignees to maintain an action of ejectment for any particular part thereof or interest therein, and that the court did not err in striking out and excluding from the evidence the lease and assignment thereof, and in instructing the jury to find a verdict for the defendant. Upon the other questions we express no opinion.

The judgment must be affirmed, with costs, and the record remanded for further proceedings under the statute.

The other Justices concurred.