Argued October 23, modified December 1, 1914.

## DELLWO *v.* EDWARDS.

(144 Pac. 441.)

**Appeal and Error—Scope of Review—Failure to Cross-appeal.**

1. Where defendant does not appeal or cross-appeal from a decree allowing plaintiff certain items as an offset in a suit for an accounting, such allowance will not be reviewed by the Supreme Court.

**Landlord and Tenant—Breach of Lease—Damages—Sufficiency of Evidence.**

2. Evidence, in a landlord's suit for an accounting, *held* insufficient to sustain his claim for $1,000 damages from defendant's failure to farm the leased lands in accordance with the best customs of the country and to carefully and seasonably care for the crops grown thereon.

**Landlord and Tenant—Lease—Modification—Validity.**

3. The parties to a written lease, providing for a division of the crop, may, by subsequent oral agreement, construe the lease to mean that, according to the custom of the country, the grain shall be divided after the work stock has been fed, where the lease does not specify particularly in regard to such matter.

[As to agreements for cultivation of land on shares, see note in 37 Am. Dec. 317.]

**Landlord and Tenant—Lease—Construction—Right to Sell Water.**

4. A lease providing for the cultivation by the lessee of the tillable land and the raising of crops of grain thereon, one third of which was to be paid the lessor as rent, did not authorize the lessee to sell water from a farm well drilled by the lessor pursuant to the terms of the lease to secure water "for use on said ranch."

**Landlord and Tenant—Lease—Construction.**

5. A written lease must, if possible, be given such construction as will render all its clauses harmonious and carry into effect the intention of the parties, as derived from an examination of the whole instrument.

Landlord and Tenant—Sale of Water—Recovery by Landlord—De-
  duction for Expenses.

6. Where a tenant, by the unauthorized sale of water from a
well on the leased premises, rendered himself liable to pay the land-
lord reasonable compensation therefor, he was entitled to have a sum,
which he had necessarily expended to provide a means of obtaining
a sufficient supply of water for such sales, deducted from the proceeds
of the sales preliminary to a determination of what would constitute
a reasonable compensation.

From Umatilla: Gilbert W. Phelps, Judge.

In Banc.    Statement by Mr. Justice Bean.

This is a suit by N. Dellwo against S. A. Edwards
for an accounting.    A decree was rendered in the Cir-
cuit Court in favor of the defendant for the sum of
$1,590.80.

The controversy arose out of the following transac-
tion: On November 30, 1908, plaintiff Dellwo leased
to defendant Edwards 1,230 acres of land in Umatilla
County for the purpose of raising grain thereon.    The
written lease contained the usual covenants in such
leases, and provided, among other things, that
Edwards would farm the land according to the best
custom of the country; that he would carefully, sea-
sonably and in a good and husbandlike manner sum-
mer-fallow during the summer, cultivate and care for
the lands, keep them free from weeds and in a good
condition for the best crops; that he would seed the
same to grain, a portion of the land to be seeded each
alternate year, and harvest, thresh, sack and care for
all the grain grown thereon; that he would plow the
land not less than six inches deep and complete the
plowing each year not later than May 1st, pursue
modern methods found best adapted to the character
of the land, and deliver to the lessor each crop season
one third of all the crops grown on the premises, in
the sack, at the nearest railroad warehouse, free of all

charge and expense. It was mutually agreed that at the expiration of the lease, if the same were not renewed, Dellwo should pay the going price per acre for putting in condition for seeding that portion of the lands which would be ready for seeding the fall of 1913. It was likewise agreed that "said Dellwo shall forthwith sink a drilled well on said premises, and thus secure water for use on said ranch and install therein a windmill and pump all at his own expense and charge," except that Edwards agreed to board the men for a reasonable time and furnish necessary gasoline for engine used in drilling; it being at the option of Dellwo whether the well should be sunk deeper than 300 feet. Pursuant to this last-mentioned covenant, Dellwo drilled the well, and the testimony shows that the water soon stood 75 or 80 feet deep. During the season of 1913 Edwards summer-fallowed and cultivated what was ascertained to be 692 acres, for which he brought an action to recover at the rate of $2.75 per acre. Thereupon Dellwo filed an answer and also a complaint in equity in the nature of a cross-bill asking an accounting for his share of the crop which had not been delivered to him, for one third of the proceeds of the sale of water from the well mentioned, the total of which the trial court found to be $600, and for $244 grain fed to the work animals during the harvest times, and also claiming that, on account of the failure of Edwards to fulfill the terms of the lease and properly cultivate the lands, he had lost $1,000. The trial court allowed the defendant $1,730 for summer-fallowing and cultivating 692 acres at $2.50 per acre, deducting therefrom the following amounts allowed the plaintiff as an offset: $32.20 for balance of one-third share of wheat; $50 for injury to the windmill; and $57 for injury to wheat on account of

the defendant's allowing the same to remain in the field late in the season and become damaged—making an aggregate of $139.20, and leaving $1,590.80 for the defendant.                                    MODIFIED.

For appellant there was a brief and an oral argument by *Mr. Stephen A. Lowell.*

For respondent there was a brief over the names of *Mr. Frederick Steiwer* and *Mr. George W. Coutts,* with an oral argument by *Mr. Steiwer.*

MR. JUSTICE BEAN delivered the opinion of the court.

1. In the brief of counsel for defendant considerable space is taken discussing the evidence and the findings of the court in regard to the three items allowed the plaintiff as an offset. The defendant did not take an appeal or cross-appeal from the decree, and therefore it is presumed that it was satisfactory to him, and any questions not raised by the plaintiff, who is appellant, do not require consideration. The three items referred to may therefore be passed. The plaintiff practically accedes to the finding of the trial court as to the $2.50 per acre for plowing and cultivating 692 acres in 1913.

2. It will be noticed that by the terms of the lease the defendant covenanted that he would farm the lands leased in accordance with the best customs of the country and carefully and seasonably care for the crops grown thereon. The main contention of the plaintiff is that the defendant failed in this respect, and by reason of such failure plaintiff has been damaged in the sum of $1,000. This is based largely upon the fact that upon the adjoining lands, which were shown to be of about the same character, a greater

number of bushels per acre of grain were grown than defendant raised upon the leased lands. Comparison is made with three adjacent farms, namely, that of Whitmore, Lawson and Shumway. It is evident that this is not a safe criterion, as the yield on these three places for the same year varies from 4.5 to 16 bushels per acre, being about as much as the yield on the Dellwo land varies from that of those mentioned; the Dellwo crop not being the lowest. It is shown by the evidence of farmers residing in that neighborhood, several of whom were called as witnesses for the plaintiff, that in that country the crop of wheat depended to a great extent upon the kind sowed; that, if the farmers sowed the same kind of wheat and farmed the land in a like manner, they would obtain about the same results, but that, quoting from Mr. Whitmore, ''each year one kind of seed is good, and the next year maybe that same kind of seed would not make any crop at all''; that there is no way of telling with certainty what kind of seed to sow; that a good farmer can miss in his judgment; that the plaintiff cultivated the land about the same as the other farmers in that neighborhood; that the cultivation was all right, except that during the season of 1912 the defendant's work animals died, and while he plowed the land, and cultivated the same to quite an extent, the weeds got started. It is shown, however, that on this land the crop of 1913 was the best that the plaintiff raised during the term of the lease. It is not shown by the plaintiff but that the failure to keep all the weeds subjugated during the summer was made up by later cultivation of the land during the fall, nor that this could not be done.

Mr. Dellwo was away from the state most of the time, and knew but little about the cultivation of the land, except as the results showed. Mr. Edwards

swore in substance that he plowed the land six or seven inches deep, harrowed the same, and that, when weeds started, he went over it with rod or blade; that he generally harrowed twice before seeding; that the land was in a better state of cultivation when he left it than when he leased it. Plaintiff has failed to sustain the allegations of his complaint as to the $1,000 damages.

3. Plaintiff claims that, under the terms of the lease, Edwards was to pay all the expenses of raising and harvesting the crops, but was not to pay for the sacks for his one-third part; that defendant used $244 worth of his share of the crop in feeding about 35 head of horses and mules while harvesting during the different seasons. It appears that, after the first crop was harvested in 1909, a dispute arose in regard to barley fed to the horses from the undivided crop while harvesting that year. Defendant contended that, according to the custom of the country, the grain should be divided after the work stock had been fed. It is shown by the evidence that inquiry in regard thereto was made by the plaintiff, and that, upon being informed that such was the custom, he agreed to the same; that the matter was thoroughly discussed and settled; that the hay and feed for future seasons was referred to and included. Defendant contends that the terms of the lease were thereby modified and construed in conformity with the prevailing customs by the subsequent agreement of the parties. It appears that, before harvesting the grain, a strip from 18 to 24 feet in width was usually cut around the field for hay in order to make room for the combined header and thresher to be run around the same without tramping down the grain; and that this hay and also grain were used for feeding the teams during harvest. It was proper

73 Or.—21

for the parties by a subsequent agreement to put their own construction upon the written memorandum, which does not specify particularly in regard to this feature of the transaction: Wigmore, Evid., § 2440. The matter was a subject of contract between the parties. They had the privilege of making a stipulation in conformity with the custom or at variance therewith. The only inquiry is: What was the agreement? We find from the evidence that it was mutually agreed between the parties regarding the feed, as claimed by the defendant.

4. The next problem presented is in regard to the water from the well on the farm drilled by the lessor to secure water "for use on said ranch," which water defendant sold to other parties, and for which he received about $600, of which plaintiff claims $200. This item was disallowed by the trial court. It must be conceded that the land was leased for agricultural purposes, namely, the raising of crops of grain thereon. At the time of the execution of the lease, the well was not in existence. It was contemplated to the extent of furnishing water for use on the ranch, and for nothing more. The sale of water as a product of the farm does not appear to have been considered by the parties or intended to have been embraced in the terms of the lease. The matter must therefore be treated as one in regard to which no contract has been made by the parties. Mr. Wigmore, in discussing a kindred question, says in 4 Wigmore, Evidence, Section 2430, in part:

"Whether a particular subject of negotiation is embodied by the writing depends wholly upon the intent of the parties thereto. * * This intent must be sought where always intent must be sought, * * namely, in the conduct and language of the parties and the sur-

rounding circumstances. The document alone will not suffice. What it was intended to cover cannot be known till we know what there was to cover.''

The question directly involved is new, but we think the principle to be applied has been invoked in analogous cases. It has been held that where land was leased for a particular purpose or object, and by the express terms of the lease its enjoyment by the lessee was limited to the defined use, namely, ''for agricultural purposes,'' the lessor did not have the right under the lease to work a stone quarry upon the land and take the profits: *Freer* v. *Stotenbur*, 34 How. Pr. (N. Y.) 440, 447. We quote from 1 Tiffany, Landlord and Tenant, Section 109, subdivision 4:

''A particular tenant, such as a tenant for life or years, has, in the absence of a stipulation or license allowing him so to do, no right to take clay, gravel, soil and the like, unless such material was one of the recognized profits of the land before the commencement of his tenancy, nor can he open new quarries, mines or oil or gas wells, unless he is expressly given such right. Quarries, mines or wells, however, which were opened before the commencement of the tenancy in question, may be worked by the tenant; it being considered that the previous owner, by such opening, made the minerals a part of the regular profits of the land.''

5. In construing a written lease, the intent must be gathered from an examination of the whole instrument, and such a construction should be given it, if possible, as will render all its clauses harmonious, so as to carry into effect the actual purpose and intention of the parties as derived therefrom. To give such an instrument a narrow and technical interpretation is contrary to well-settled rules of construction: *Harlow* v. *Lake Superior Iron Co.*, 36 Mich. 105. In the case at bar the lease under consideration provides

for the cultivation by the lessee of the tillable land demised and the raising of crops of grain thereon, one third of which is paid to the lessor as rent, and two thirds to the lessee as compensation for performing the necessary labor. The lease is strictly for agricultural purposes, and confers no right to the use or possession of the land by the lessee for any other object, except as an incident to the main purpose of agriculture. When Dellwo succeeded in obtaining a bountiful supply of water in a semi-arid belt of country by drilling the well on the land, the right to the use of all the water in excess of the needs upon the land as an incident to the cultivation thereof belonged to him, and did not pass to Edwards, the lessee, under the terms of the lease which had theretofore been executed. The circumstances were the same as the drilling of an oil well would have been, except in degree.

6. It appears that, pursuant to the stipulation in the lease Dellwo also purchased and installed a pump and windmill to pump the water used on the ranch; that this was unsatisfactory and insufficient for the use on the land and entirely inadequate for the purpose of raising all the water that could be pumped from the well. It also appears that plaintiff and defendant constructed a reservoir to be used in connection with the well. In order to provide a means of obtaining a sufficient supply of water for sale to those who desired it, and a more regular and convenient way of pumping the water used on the ranch, Edwards at his own expense purchased, installed and used for about three or four years a gasoline engine at an expense of $248, after deducting the value of the engine at the expiration of the lease. This was in addition to some fixtures and gasoline used in operating the engine furnished by Edwards. This amount of $248 should in

equity be deducted from the $600 received by the defendant from the sale of water: *Williamson* v. *Jones,* 43 W. Va. 562, 592 (27 S. E. 411, 64 Am. St. Rep. 891, 38 L. R. A. 694). As we understand the evidence, it is not claimed but that one third of the remainder, or one third of $352, is a reasonable compensation to be paid to the plaintiff as his share of the proceeds of sales of water, if he is entitled to anything; therefore the additional amount of $117.33 should be deducted from the defendant's judgment.

The decree of the lower court will be modified to this extent. As the principal amounts claimed by the plaintiff upon this appeal have been denied him, neither party will recover costs in this court.

MODIFIED.