PFISTER LAND COMPANY, Respondent, vs. CITY OF MIL-
WAUKEE, Appellant.

*October 23—November 13, 1917.*

*Income taxation: Royalties upon ore taken from mine: "Rentals:"*
*Deductions: "Depreciation" of property: Construction of stat-*
*utes: Conflict of laws.*

1. Royalties received by the owner from the lessee of a mine, upon
   the ore taken therefrom, are "income" within the meaning of the
   Income Tax Law of 1911 (sub. 2, sec. 1087*m*—2, Stats. 1911).
2. Such royalties are "rent" and "rentals" within the meaning of
   said law and were subject to income taxation thereunder if re-
   ceived by a resident of this state, though derived from sources
   without the state (sub. 3, sec. 1087*m*—2, Stats. 1911).
3. The law of the state in which the mine is located is not binding
   upon the courts of this state upon the question whether or not
   such royalties are "rentals" within the meaning of our statute.
4. The taking out of the ore upon which such royalties were paid
   did not constitute a "depreciation" of the property, for which
   under sub. (b), sec. 1087*m*—3, Stats. 1911, the corporation own-
   ing the mine might make a deduction from its gross income.

APPEAL from a judgment of the circuit court for Milwau-
kee county: F. C. ESCHWEILER, Circuit Judge. *Reversed.*

Action to recover income taxes paid under protest for the
years 1911 and 1912. The facts were these: Plaintiff, a
domestic corporation, owns two iron mines in Michigan.
Prior to the year 1900 it leased both mines to third persons
by written leases, each running for the period of twenty
years, the lessees agreeing to take the premises upon the lease
and to pay therefor certain specified royalties annually on
the iron ore taken out. The plaintiff received royalties
under these leases amounting to $84,189.83 in the year 1911
and $57,932.07 in 1912, and the income taxes in question
were levied on account of the moneys so received.

The trial court held that the royalties received were in
fact a part of the plaintiff's capital converted into money and

hence not taxable as income, and entered judgment for the plaintiff, and the defendant appeals.

For the appellant there was a brief by *Clifton Williams,* city attorney, and *Garfield S. Canright,* assistant city attorney, and oral argument by *Mr. Canright.*

For the respondent there was a brief by *Flanders & Fawsett,* attorneys, and *Charles F. Fawsett,* counsel, all of Milwaukee, and oral argument by *Charles F. Fawsett.*

WINSLOW, C. J. The Income Tax Law of 1911 (ch. 658, Laws 1911), which was in force at the time the taxes in question here were levied, provided in substance that the term "income" as used in the act should include "all rent of real estate," and that the tax should be levied upon "rentals" received by any resident of the state whether derived from sources within or without the state. The act further provided that corporations should be allowed to deduct from their gross income (among other items) "ordinary and necessary expenses actually paid within the year out of income in the maintenance and operation of its business and property, *including* a reasonable allowance for depreciation of property from which the income is derived."

The questions which arise in the present case may be stated thus:

1. Are the royalties in question income within the meaning of the law, or converted capital?

2. If income, do they constitute rent within the meaning of the law?

3. If so, can there be a deduction for depreciation in the value of the mine by reason of the taking out of the ore?

We do not feel that it would be profitable to attempt to philosophize on income taxation in general or on the special aspects of such taxation suggested by these questions. New and delicate problems are arising daily in this important field

of taxation, and what seems like unassailable reasoning today may appear quite indefensible tomorrow when a different set of facts radically changes the viewpoint. It seems that the most important questions involved here have been practically decided in favor of the city by the supreme court of the United States in the case of *Von Baumbach v. Sargent L. Co.* 242 U. S. 503, 37 Sup. Ct. 201, which was decided after the rendition of judgment in the present case.

In that case, which arose under the federal law of 1909 imposing taxes upon the income of corporations, it was held, citing former decisions of the same court, that royalties paid by the lessees of mines to the corporation owner by virtue of leases substantially like those involved in the present case were not to be viewed as the proceeds of property sold, but as rents, and hence fairly within the term "income" under the terms of the Corporation Tax Act. We are content to follow this high authority, and this consideration fully answers the first question suggested.

In the same case the question of what would constitute depreciation of property within the meaning of the federal Corporation Tax Act was considered. That act permitted deduction of "all losses actually sustained within the year . . . including a reasonable allowance for depreciation of property." The court said that the word "depreciation" was here used in its ordinary and usual sense as understood by business men, namely, as those amounts which business concerns usually charge off in the depreciation account for wear and tear, and obsolescence of structures, machinery, and personalty in the business. The court further said that it would be a strained use of the term to say that, where ore is taken from a mine, depreciation as generally understood in business circles follows, and pointed to the fact that in 1913 Congress, in the income tax section of the tariff act of that year, specially provided for an allowance for depreciation not ex-

ceeding, "in the case of mines, five per centum of the gross value at the mine" of the year's output.

The reasoning seems to apply fully as well to our Income Tax Act of 1911 as to the federal act under consideration in the cited case. Our act as it stood in 1911 allowed deduction of ordinary and necessary expenses in the operation and maintenance of the business and property, "including a reasonable allowance for depreciation of property from which the income is derived." This language, in our judgment, just as persuasively indicates that ordinary depreciation of business structures and personalty was in the legislative mind when the act was passed as does the language of the federal act.

The question whether such royalties constitute "rent" within the meaning of the act still remains to be decided. The determination of this question was not necessary in the *Von Baumbach Case,* although the subject was discussed, and it was said that the Minnesota decisions holding them to be rents are supported by many authorities, which are cited in a note to the case. The cases there cited will also be found cited with others to the same effect in the opinion of HALLAM, J., in the last Minnesota decision on the subject, *i. e. State v. Royal M. Asso.* 132 Minn. 232, 156 N. W. 128. The fundamental principle on which these holdings are based is that by the contract between the parties the legal relation of landlord and tenant is created, and when that relation is created whatever is paid for the occupation, whether it be money or kind, is equally in substance rent; *i. e.* "the compensation which the occupier pays the landlord for the species of occupation which the contract between them allows." *Queen v. Westbrook,* 10 Q. B. 178.

We see no fault in the logic, and we therefore hold the royalties in question to be "rentals" which, though derived from sources without the state, are subject to income taxation under the act because received by a resident.

Our attention is called to a decision of the supreme court of Michigan (*Harlow v. Lake Superior I. Co.* 36 Mich. 105) where such an instrument as is here in question was held to be not a lease but a mining privilege, and it is argued that this court is bound by the law of Michigan in determining the question because the lands from which the revenue comes are located in Michigan. This position is untenable. The question here is, What did the legislature of Wisconsin mean by the word "rentals" in the Income Tax Act? If it meant to include under that term such revenues as these so-called royalties, that settles the question, so far at least as residents of this state are concerned. It seems clear to us that the legislature intended to include such revenues as these under the term "rent" and "rentals." We cannot think that it was intended to include the revenue received from a rented farm and leave out the revenue from a rented mine.

The agreements which were construed by this court in the cases of *Gillett v. Treganza,* 6 Wis. 343, and *Treat v. Hiles,* 68 Wis. 344, 32 N. W. 517, are not considered as essentially similar to the leases here in question, and hence the decisions in those cases are not persuasive here. The cases of *State ex rel. Bundy v. Nygaard,* 163 Wis. 307, 158 N. W. 87, and *Klar Piquett M. Co. v. Platteville,* 163 Wis. 215, 157 N. W. 763, are cited by respondent as tending to support its claim in the present case, but their bearing upon the questions here involved seems to us very remote, and we do not deem it necessary to discuss them.

*By the Court.*—Judgment reversed, and action remanded with directions to dismiss the complaint.

ESCHWEILER, J., took no part.