Argued April 7, affirmed April 19, 1977

In the Matter of a Controversy between
# WALLING WAREHOUSE COMPANY, *Appellant,*
*and*
# SPRINGHILL FUEL COMPANY, *Respondent.*
(No. 94119, SC 24617)

562 P2d 1221

David A. Rhoten, Salem, argued the cause for appellant. With him on the brief was Rhoten, Rhoten & Speerstra, Salem.

Bruce W. Williams, Salem, argued the cause for respondent. With him on the brief was Williams, Spooner & Graves, Salem.

Before Denecke, Chief Justice, and Bryson, Linde, and Davis, Justices.

DAVIS, J., Pro Tempore.

**DAVIS, J.,** Pro Tempore.

The parties jointly submitted to the trial court a "Request for Determination" pursuant to ORS 27.010, 27.020, and 27.030.[1]

On January 31, 1967, plaintiff, as lessor, and defendant, as lessee, entered into a long-term lease option (to purchase) commercial property located in Salem, Oregon. Before the option to purchase this property was exercised by defendant, the City of Salem filed a sewer lien assessment against the property in the amount of $16,607.52. The trial court rendered the following written opinion, which includes the question for determination.

"* * * * *.

"The issue for determination is whose responsibility it is to pay for a sewer assessment which Walling received notice of on February 14, 1975, and which assessment was entered in the Salem Docket of City Liens as a lien against the property.

"At that time Springhill was in possession of the property under the terms of a lease and option which had been entered into between Walling and Springhill on January 31, 1967. At the time of the notice of assessment

---

[1] ORS 27.010: "Parties to a question in controversy, which might be the subject of an action or suit in a court of record with such parties plaintiffs and defendants, may submit the question to the determination of such court without action or suit, as provided in ORS 27.020 and 27.030."

ORS 27.020: "The parties as plaintiff and defendant shall state, in writing, a case containing the facts upon which the controversy depends, and subscribe the same in person or by their attorneys. Such statement shall be verified by the oaths of the parties, or where there is more than one plaintiff or defendant, by at least one of each, to the effect that the controversy is real, and the proceeding is taken in good faith to determine the rights of the parties. Where either party to the controversy is the state, a county, or other public corporation therein, or a private corporation, or minor, the statement of the case may be subscribed and verified by any person who at the time sustains the relation to such state, county, corporation or minor, as would authorize the service of a summons upon him."

ORS 27.030: "The statement shall be filed with the clerk, and from the date of filing the court shall have jurisdiction of the controversy as if it was an action pending after a special verdict found, and shall proceed to hear and determine the controversy accordingly."

Springhill, under an extension provision of the original lease, had the right to occupy the premises for over three years. It is apparent from an examination of the lease that the precise question of the payment of special assessments was not covered and probably was not even contemplated by the parties.

"Pursuant to the provisions of paragraph 14 of the lease and after the notice of assessment had been received by Walling, Springhill exercised its option to purchase, and the sale was consummated on December 16, 1975.

"Walling asserts that Springhill should pay the assessment by virtue of paragraph 13 of the lease, which paragraph provides that Springhill will assume payment of any increase in real estate taxes over the base year of 1967-1968 and that the 'assessment' is 'taxes'; that paragraph 4 of the agreement provides that Springhill would assume payment for all charges for utilities and that the term 'utilities' would include the special assessment for the sewer, and finally that if Walling is required to pay the assessment it would result in an unjust enrichment of Springhill.

"I have examined the authorities cited in counsels' memorandums and from those authorities I conclude that under the lease option agreement in this case the provisions of that agreement, cited by Walling, do not support a finding that the sewer assessment comes under provisions for payment of taxes or for the provisions concerning payment of utilities.

"The annotation cited by Springhill, Lease—Covenant to Pay Taxes—Scope (1929), 63 ALR 1391, contains an exhaustive discussion of the subject and it seems to the Court that the majority rule and that which is best supported by common sense and logic is:

" '...that where the agreement is restricted to the word "taxes," or modified terms to that effect, as "all taxes," the lessee is not bound to pay for special assessments against the demised premises.'

"The case reproduced at 63 ALR 1386, Blake v. Metropolitan Chain Stores, 247 Mich. 73, 225 NW 587, in interpreting the following provision,

" '...pay as part of the rental of said premises, all taxes, ordinary as well as extraordinary, of every

kind, that may be levied upon or assessed against said premises, or any part thereof during the term of this lease...'

stated that,

" '...it seems clear that it (the covenant to pay) does not embrace an undertaking to pay a special assessment for a street improvement which has benefitted the property itself to the amount thereof.' 63 ALR 1390.

"In the case of *Swetland Bldg. Co. v. Children's Home,* 127 Or 188, 192, 270 P. 927 (1928), in which the Court required the lessee to pay for ornamental lighting under the terms of that agreement, indicates the type of specificity required in a lease to subject the lessee to payment. The lease provision in that case provided:

" 'Third: That said Lessee shall pay all taxes on all the buildings and improvements on said premises, and said Lessor shall only pay the tax on the land, and that said Lessee shall from this date pay all sidewalk, sewer, water main and street assessments on all of said property, both land and improvements.'

*Swetland, supra,* at page 192, also tells us that,

" '2, 3. It is a general rule of construction that where the language of a lease is of doubtful meaning and susceptible of two constructions it must be construed favorably to the lessee. To construe a lease is to ascertain the meaning of the parties thereto. Their meaning must be determined from the language of the lease, and where that is doubtful other established rules of construction are utilized. For the purpose of determining the meaning of the parties we must apply the ordinary rules of construction that leases, like other contracts, must be construed as a whole. The lease and the subsequent modification thereof should be construed together: *Gearin v. Rothchild Bros.,* 88 Or 403 (170 Pac. 923); *Dellwo v. Edwards,* 73 Or 316 (144 Pac. 441).'

"Construing the lease and option agreement as a whole, we find many provisions that demonstrate that Walling assumed primary responsibility for the premises. Paragraph 5 provided that Walling was responsible for the outside walls, roof, and foundation, the heating and plumbing systems. Paragraph 6 put the risk of loss

of the improvements on Walling, and Paragraph 7 made Walling responsible for rebuilding or repairing in case of fire. Paragraph 10 gives any award or compensation from a condemnation proceeding to Walling subject to Springhill's unexpired lease term. Paragraph 14 requires Walling, in case Springhill exercised its right to purchase, to prove a 'good and merchantable title...free from any liens.'

"If Springhill had not exercise[d] its option to purchase, the property would have reverted to Walling at the expiration of the leasing agreements.

"It seems apparent from an examination of the lease when examined in its entirety that the financial responsibility for the sewer assessment should be with Walling. The option to purchase recites separate consideration for the option in addition to any other rights of Springhill under the agreement and Springhill was given the option to purchase for the sum of $203,000.00.

"* * * * *."

In our judgment the record supports the opinion of the trial court in holding plaintiff responsible for the payment of the sewer assessment.

Affirmed.