TOOTLE et al. v. BUCKINGHAM et al., Appellants.

**Division One, July 1, 1905.**

1. **MORTGAGE: Mixing Properties.** The mortgagor can not by mixing other cattle of like description with those covered by the mortgage defeat the mortgage, either in his own favor or in, that of a subsequent purchaser under him.

2. ———: **Sale: Innocent Purchaser: Fraud.** Where the mortgagor in a chattel mortgage covering cattle told a prospective purchaser while he was negotiating a sale that they were mortgaged and that for that reason the sale would only be for cash to pay the mortgagee, and the purchaser agreed to pay cash, but maneuvered to get possession and surreptitiously removed them to another county from that in which the mortgagor resided and in which the mortgage was registered as the statute required, the purchaser is not an innocent purchaser. And where, in addition to these facts, the evidence shows that four days prior to his purchase the purchaser had mortgaged the cattle, as being in the county to which they were subsequently removed, to a commission firm and that firm transferred this

latter mortgage and the notes secured thereby to defendants, they can not claim to be innocent purchasers as against the holders of the first mortgage. All these facts stamp the purchaser's transactions as fraud, and the defendants stand in his shoes.

3.  **JUDGMENT: Based on Statement of Attorney.** If the facts stated by plaintiff's attorney in his opening statement are such that plaintiff can not recover, the court has jurisdiction to render judgment thereon for defendant; and, in such case, the judgment is not open to collateral attack on the suggestion that the court erred in its opinion.

4.  ———: ———: **Of Another State.** Such a judgment rendered by a court of competent jurisdiction in another State, will be given the same force and effect as if it had been rendered by a Missouri court.

5.  ———: ———: **Wrong Party: Replevin.** Plaintiffs, living in Missouri, bought a mortgage and the notes on cattle in Kansas, which were sold by the mortgagor contrary to the provisions of the mortgage, and taken to another county, and thereupon plaintiffs placed the notes in the hands of the payee and mortgagee and instructed him to sue in replevin, which was done, the suit being brought in his name, and when the suit came to trial plaintiff's attorney stated to the court that the plaintiff was not the real owner of the notes and mortgage but held them for collection. Thereupon the court held that plaintiff as the mere agent of his principal could not maintain an action of replevin, and rendered judgment for defendant. *Held*, first, that it is only matters actually considered by the court that are settled by a judgment, and not every possible issue that might have been tried under the pleadings; second, there was no adjudication in that action of plaintiffs' title to the cattle, and hence their right to the money received by them for the cattle recovered and sold after the replevin was begun was not settled by that judgment.

6.  ———: **Replevin: Collection Enjoined.** Plaintiffs, the owners of notes and a mortgage covering cattle in Kansas, when they found that the mortgagor had wrongfully sold them, indorsed the notes to the payee for collection, sent them to him and directed him to sue in replevin, and gave the usual bond. The cattle were recovered, turned over to the payee, shipped to Missouri and sold for $4,500, the money being turned over to plaintiffs, who still have it. In the trial of the replevin suit the Kansas court held that the payee as the plaintiffs' agent could not maintain the suit, and rendered judgment for the value of the cattle, $6,000, for the defendant, who had fraudulently obtained possession of the cattle from the mortgagor knowing they were mortgaged to plaintiffs, and that defendant sold the judgment

to these defendants. *Held*, first, that they should be enjoined from collecting their judgment for $6,000; second, the case is not one in which plaintiffs are assailing the Kansas judgment as one concocted in fraud, but is a case in which the judgment stands in place of the cattle, and the defendants, who are not entitled to them, are in a position, if left alone at law, to enforce it against the plaintiffs, to whom the cattle rightfully belonged, and, third, if equity can not restrain defendants in the collection of that judgment, justice is defeated by the forms of law.

Appeal from Buchanan Circuit Court.—*Hon. A. M. Woodson*, Judge.

AFFIRMED.

*Johnson, Rush & Stringfellow* for appellants.

(1) Full faith and credit shall be given in each State to the public acts, records and judicial proceedings of every other State. U. S. Constitution, art. 4, sec. 1; Hanley v. Donaghue, 116 U. S. 1; Huntington v. Attrill, 146 U. S. 657; Harbin v. Chiles, 20 Mo. 314; Crim v. Crim, 162 Mo. 544. (2) It is proper for a trial court to render judgment on the opening statements of counsel where such statements contain admissions warranting such action. Oscanyon v. Winchester Arms Co., 103 U. S. 263; Clews v. Bank, 105 N. Y. 398; Denenfield v. Bowman, 58 N. Y. Supp. 111; Thompson on Trials, sec. 269; Abbott's Trial Brief, p. 40. This is the prevailing practice in the State of Kansas. Lindley v. Railroad, 47 Kan. 432; Railroad v. Hartman, 40 Pac. 109. It is also the practice in this State. Pratt v. Conway, 148 Mo. 299; St. Louis v. Babcock, 156 Mo. 154. Even if a party was so unscrupulous as to be willing, he ought not to be allowed to swear around an admission made in an opening statement. Rice on Evid., p. 128. The proceeding in the Kansas court was a trial on the merits, "a judicial examination of the issues," since it was a decision of the issues based upon admissions made in open court by the counsel of the plaintiff

in that case, and this was admitted by the filing of a motion for a new trial in that case. Crossland v. Admire, 118 Mo. 87. (3) The suit was properly dismissed as to defendant Buckingham. Service of summons outside of the State in divorce and other proceedings in which such service is provided by our statutes is equivalent to service by publication. Orear v. Clough, 52 Mo. 55. A personal judgment cannot be rendered on such service. Hendrix v. Railroad, 77 S. W. 495; Wilson v. Railroad, 108 Mo. 596; Hamill v. Talbott, 81 Mo. App. 214. In this case there is no attachment, no lien of any kind on property involved, no receiver, no money paid into court, no property of any kind was at the time of the trial nor had ever been in the custody or control of the court, hence there was no foundation for a judgment *in rem* or for service outside the State. The jurisdiction of the court to inquire into and determine the obligations of a non-resident so served is only incidental to its jurisdiction over the property. Some property must be brought under the control of the court by seizure or some equivalent action. Pennoyer v. Neff, 95 U. S. 714; Cooper v. Reynolds, 10 Wall. 308; Hawes on Jurisd., sec. 233. Without some property in the custody of the court the court is without jurisdiction, and a judgment founded on such service is void. Smith v. McCutchen, 38 Mo. 415; Ellison v. Martin, 53 Mo. 575; Latimer v. Railroad, 43 Mo. 105; Byer v. Trust Co., 63 Mo. App. 521; Adams v. Hecksher, 80 Fed. 742; Fisher v. Evans, 25 Mo. App. 582. Defendant Buckingham having been the sole defendant in the Kansas suit, even if it were otherwise possible, a suit here could not affect the binding force or the rights acquired under the judgment in that suit without having him in court. After publication a petition not coming within the statute allowing substituted service on a non-resident cannot even be so amended as to give the court jurisdiction. Janney v. Spedden, 38 Mo. 395; Adams v. Hecksher, 80 Fed. 742. (4) In order to be valid, a mort-

gage, where possession is not delivered, must describe the property conveyed so that a stranger with the mortgage in his hand can pick it out. Evans-Snyder-Buell Co. v. Turner, 143 Mo. 638; Stonebraker v. Ford, 81 Mo. 532; Hughes v. Menefee, 29 Mo. App. 192; Jones, Chat. Mtgs., secs. 54, 55; Chandler v. West, 37 Mo. App. 635; 5 Am. and Eng. Ency. Law, 956, 962. When stock is described as located on a particular farm or at a particular place, they must be the only stock at that place to which the description would apply. Lafayette County Bank v. Metcalf, 29 Mo. App. 394. If the animals mortgaged are mixed in with a number of others of a similar kind, the mortgage is void. Dawson v. Cross, 88 Mo. App. 296. The fact of such mixing may be shown by the evidence outside of the mortgage. Estes v. Springer, 47 Mo. App. 104; Bank v. Shackelford, 67 Mo. App. 480. Although the mortgage may be good between the parties to it, the location being made a part of the description, the mortgage is made inoperative as to the parties to this controversy by the fact that were other cattle of like description at the same place. Stonebraker v. Ford, 81 Mo. 532; Jones Bros. Live Stock Com. Co. v. Long, 90 Mo. App. 8; Young v. Bank, 97 Mo. App. 582; Mackey v. Jenkins, 62 Mo. App. 618; North Inv. & Corp. Co. v. Davis, 76 Mo. App. 512. (5) The judgment in the Kansas suit is conclusive on plaintiffs.

*R. A. Brown* and *Scarritt, Griffith & Jones* for respondents.

(1) Equity has jurisdiction. (a) The action is to follow up and reclaim a trust fund. (b) To avoid a multiplicity of suits at law. (c) All the defendants liable at law are insolvent. 2 Story, Eq. Jur., sec. 899; Johnson v. Huber (Wis.), 82 N. W. 138; Moore v. Jaeger, 19 Cen. Dig. 138; Burney v. Stevenson, 15 Am. Rep. 621; Davis v. Mugan, 56 Mo. App. 311; Snorgrass

v. Moore, 30 Mo. App. 235; Evans v. Railroad, 64 Mo. 453; Parks v. Bank, 31 Mo. App. 12; Biddle v. Ramsey, 52 Mo. 153. (2) The rights of the plaintiffs in this case were not finally adjudicated and disposed of in the trial and judgment in the replevin suit in the State of Kansas. (a) The plaintiffs in this case were not parties to the replevin suit in Kansas. Their application to be made such was summarily overruled by the Kansas court. (b) There was no trial of the merits of the replevin suit in the Kansas court, the judgment there being founded upon the fact that the J. C. Bohart Commission Company, the plaintiff in that case, was not the real party in interest therein. Snorgrass v. Moore, supra; Bell v. Hoagland, 15 Mo. 360; Hickerson v. City, 58 Mo. 61; Spradling v. Conway, 51 Mo. 51; Garrett v. Greenwell, 90 Mo. 120; Baldwin v. Davidson, 139 Mo. 118. (3) The testimony shows that the Cooke mortgages were in full force and effect and were sold by Cooke to the plaintiffs for a sufficient and valuable consideration. (4) The effect of the Kansas judgment is to require the plaintiffs to pay again for their own cattle by reason of the indemnity given to the sureties upon the replevin bond in that case. (5) The merits of the replevin suit were not tried in the Kansas court. The appealing defendants had knowledge of the plaintiff's claims. There was no consideration given for the assignment of the Kansas judgment. (6) The contention that the mislocation of the cattle in the descriptions in the Bohart mortgages renders them invalid is not tenable. The cattle were otherwise sufficiently described and the mortgages were filed in the county where the mortgagor resided and the cattle were located as required by the laws of Kansas. A mistake in the description of the mortgaged cattle regarding their location does not invalidate the mortgage. Adams v. Hill, 10 Kan. 627; Estes v. Springer, 47 Mo. App. 99; Jones v. Workman (Wis.), 27 N. W. 158; Stonebraker v. Ford,

81 Mo. 532. (7) It is clearly shown by the testimony that the 243 head of cattle covered by the plaintiff's mortgages were not so mixed or commingled with other cattle of the same description, by Curtis, the mortgagee, as to destroy their identity, but even if such were the case it would not avail the appealing defendants anything, as subsequent grantees or mortgagees. Adams v. Wilder, 107 Mass. 123; Hoe v. Wadsworth, 59 N. H. 402; Hesseltine v. Stockwell, 30 Me. 237; Bryant v. Ware, 30 Me. 295; Jones on Chat. Mort., sec. 481; Willard v. Rice, 11 Metc. 493; Fuller v. Paige, 26 Ill. 358. (8) The appealing defendants do not occupy the position of innocent purchasers or mortgagees. Howard v. Bank, 44 Kan. 551; Burnam & Co. v. Smith, 82 Mo. App. 48. (9) The Cooke mortgages were not discharged or cancelled. Howard v. Bank, supra.

VALLIANT, J.—This is a suit in equity, aimed to adjust the claims of the parties in a controversy growing out of certain cattle transactions in Kansas.

The substantial facts stated in the petition are as follows:

The plaintiffs, as partners in November, 1898, acquired by purchase from one of the defendants, the Bohart Commission Company, for a valuable consideration, certain negotiable promissory notes secured by two chattel mortgages covering 243 head of cattle in Kansas, the notes and mortgages were made by one Curtis, who was then the owner of the cattle, dated November 5, 1898, and the mortgages were duly registered as required by the laws of Kansas. Afterwards on November 18, 1898, in breach of the condition of the mortgages, Curtis sold and delivered 200 head of the cattle to one Gillett who, without consideration, delivered them to one Buckingham, who removed them to another county in Kansas, to-wit, Wabaunsee county. The plaintiffs, on learning of the breach, delivered the notes and mortgages to the Bohart Company from whom

they had purchased them, for the purpose of suit and collection. The Bohart Company went to Kansas and instituted an action of replevin in its own name against Buckingham in Wabaunsee county, based on the mortgages, to recover possession of the 200 head of cattle. The Kansas law required the plaintiff in such suit to give bond with resident security, and to meet this requirement the plaintiffs in this suit, Tootle, Lemon & Co., procured a correspondent of theirs resident in Kansas to become the surety, and agreed to indemnify him in the matter, which was done. Under the writ of replevin the sheriff found and seized 199 head of the cattle and delivered them to the Bohart Company, who immediately shipped them to St. Joseph, where they were sold in the market for $4,500 cash, which sum the Bohart Company placed in the plaintiffs' bank to the credit of a suspense account and it was there when this suit was filed.

Pending the suit in Kansas the plaintiffs in this suit discovered that there were two other mortgages on these cattle prior in time to the two they had bought from the Bohart Company, and in order to clear up their title they bought those also; they are called the Cooke mortgages.

In May, 1899, the replevin suit came on for trial in Kansas and in his opening statement the attorney for the plaintiff said that the plaintiff, the Bohart Commission Company, was not the real owner of the notes and mortgages but held them only for collection, whereupon the court decided that the plaintiff was not entitled to prosecute the suit and rendered judgment for the defendant Buckingham for the return of the cattle or for $6,000, their value. Buckingham immediately assigned the judgment to the Central Savings Bank of St. Joseph and its receiver.

On November 14, 1898, four days before Gillett bought the 200 head of cattle, he executed his notes for $8,000 to the Gillespie Commission Company and a

mortgage on these 200 head of cattle (or cattle of the same description) to secure the same, which notes and mortgage the Gillespie Company transferred to the Central Savings Bank.

When Curtis sold the cattle to Gillett it was with the understanding that it was to be a cash sale and Curtis intended to use the cash in payment of the Bohart mortgages then held by the plaintiffs in this suit, but Gillett got possession of the cattle without paying anything for them and he and Buckingham shipped them to Wabaunsee county.

After this suit was filed, the defendants, Shoup, McDonald, Townsend, Robinson and the Hax Realty Company purchased from the receiver of the Central Savings Bank the $6,000 Kansas judgment and on their petition were made parties defendants herein.

The prayer of the petition is that the defendants be required to interplead touching their interest in the cattle or the proceeds, that plaintiffs be decreed to have the first right to the fund in the bank and the benefit of the $6,000 Kansas judgment; that the Bohart Company be decreed to pay plaintiffs out of what it owes on the $6,000 judgment the balance due them, and that the other defendants be enjoined from attempting to collect that judgment.

The separate answer of defendants Shoup and others set up their title, as purchasers of the assets of the Central Savings Bank from the receiver, to the $6,000 Kansas judgment and the Gillespie notes and mortgage, and deny that the cattle involved in the replevin suit and covered by the Gillespie mortgage are the same cattle covered by plaintiffs' mortgages; that the notes covered by the Cooke mortgages were paid off and discharged before they came into plaintiffs' possession and that plaintiffs paid nothing for them; that if plaintiffs had any title to the cattle in the replevin suit they have already realized it by accepting the $4,500 for which the cattle were sold in St. Joseph to

which sum these defendants assert no claim, but do assert that they own and are entitled to collect the $6,000 Kansas judgment; that the Bohart Commission Company, the principal in that judgment, is insolvent.

The answer also states that at the trial of the replevin suit the attorney for the plaintiff in that suit in his opening statement said that his client had no interest in the notes or mortgages except that it held them for collection for the owners, Tootle, Lemon & Company, and that upon that statement the court rendered judgment for the defendant Buckingham.

The Bohart Company filed an answer admitting the allegations of the petition and joining in the prayer. Defendant Curtis filed an answer admitting the execution of the notes and mortgages to the Bohart Company for $7,722, and that they were unpaid, and stated that as to all other matters in the petition he had no knowledge or sufficient information to form a belief.

Buckingham, who was a non-resident of Missouri and was served with process in Kansas, filed no answer.

The cause came on to be heard on the pleadings and proofs and the court rendered a decree finding the issues for the plaintiffs and decreed that the plaintiffs were entitled to the proceeds of the cattle sold in St. Joseph, then amounting to $4,890.75, to be credited on the Curtis notes, and were also entitled to the interest of the defendants in the $6,000 Kansas judgment, and enjoined the defendants Shoup and others from attempting to collect that judgment from the principal or his sureties and enjoined the Bohart Company from paying the same to them and rendered judgment against them for costs; the decree dismissed the suit as to Buckingham on the ground that service on him in Kansas did not bring him into court. The defendants Shoup and others appealed from the decree against

them, and the plaintiffs appealed from so much of the decree as dismissed the bill as against Buckingham.

We will consider the defendants' appeal first, as that covers all that is material in the controversy.

I. The first contention is that the Cooke mortgages were satisfied before they were transferred to the plaintiffs and that plaintiffs paid no valuable consideration for them. That is not a very material question, because if the plaintiffs' title to the cattle is good by virtue of the Bohart mortgages it is sufficient, since the notes secured by those mortgages are more in amount than the value of the cattle in dispute, and in that view the Cooke mortgages would be significant only of an older outstanding title until the plaintiffs had acquired possession of them.

The evidence shows that there were negotiations between Curtis and the Baxters on the one hand, and Cooke on the other, looking to a trade of the steers covered by their mortgages for a lot of calves, and the terms were agreed on, but the terms were not carried out in the essential particular of making the cash payment; that there had been only $194 paid on the $3,080 note, and nothing paid on the other. The evidence also shows a consideration for the transfer in the form of a release by the plaintiffs to Cooke of another mortgage which seems to have been satisfactory to him whatever its value to him may have been.

II. It is also contended that the cattle covered by the Bohart mortgages are not the same cattle that were sold to Gillett and taken in the replevin suit.

There was a great deal of evidence on this point which we deem it unnecessary to review in detail; after going through it all we have no doubt of the correctness of the finding of the chancellor.

There was evidence tending to show that at the time Curtis sold to Gillett there were a large number

of other cattle of the same general description which
Curtis had put in the herd with those covered by the
Bohart mortgages which Curtis had bought from the
Baxters, but that evidence does not show that the Bax-
ter cattle could not easily be distinguished from the
others.

Curtis could not by mixing other cattle of like des-
cription with those he had mortgaged to Bohart defeat
the Bohart mortgages either in his own favor or in that
of a subsequent purchaser under him. [Adams v. Wil-
ders, 107 Mass. 123; Fuller v. Paige, 26 Ill. 358; Jones
on Chat. Mort., sec. 481.]

There is a misdescription in the Bohart mortgages
of the cattle in one particular; they are described as
being two miles north of Burham in Marion county,
Kansas, whereas they were never in that county.   Cur-
tis bought the cattle from the Baxters and they were
then in Morris county where Curtis  and the Baxters
lived, the intention was to remove the cattle to Marion
county to feed, but they had not been moved when the
Bohart mortgages were given and  when the sale to
Gillett occurred.   In other respects the cattle were cor-
rectly and sufficiently described.

At the date of these transactions the statute of
Kansas relating to registration of chattel mortgages
(Gen. Stat. Kansas, 1897, vol. 2, sec. 1. chap. 120) was
as follows:

"Section 1.   Every mortgage or  conveyance in-
tended to operate as a mortgage of personal property,
which shall not be accompanied by an immediate deliv-
ery and be followed by an actual and continued change
of possession of the things mortgaged, shall be abso-
lutely void as against the creditors of the mortgagor,
and as against subsequent purchasers and mortgagees
in good faith, unless the mortgage or a true copy there-
of shall be forthwith deposited in the office of the regis-
ter of deeds in the county where the property shall then
be situated, or if the mortgagor be a resident of this

State, then of the county of which he shall at the time be a resident.''

These Bohart mortgages were registered in conformity to the requirements of that statute in Morris county, which was the county of the mortgagor's residence and the place where the cattle were at the time, and where they were when Gillett took them.

Besides, Gillett was not an innocent purchaser. Curtis told him while he was negotiating the purchase that the cattle were mortgaged to the Bohart Commission Company and for that reason the sale would be only for cash to pay Bohart. Gillett agreed to pay cash, but manoeuvered to get possession and surreptitiously removed the cattle to Wabaunsee county where they were afterwards caught by the writ of replevin. The fraudulent scheme is also shown by the fact that four days before his purchase Gillett executed the mortgage to the Gillespie Company which that concern transferred to the Central Savings Bank and which is the mortgage under which these defendants now claim.

Under the circumstances the misdescription as to location, the description in other respects being ample, was immaterial.

The finding of the chancellor that the 200 head of cattle carried away by Gillett and found under the writ of replevin were covered by the Bohart mortgages was in accordance with the weight of the evidence.

III. Defendant's next proposition is that the replevin suit in Kansas settled the whole controversy.

We are required by our Federal Constitution to give full faith and credit to the judicial proceedings of a sister State. [U. S. Const., art. IV, sec. 1.] We will therefore give to the judgment of the Kansas court in the replevin suit, the same force and effect we would give it if it had been rendered by a court having jurisdiction of the suit in this State. The court had jurisdiction to render judgment for defendant if in its opinion the facts stated by the plaintiff's attorney in his

opening statement were such that the plaintiff was not entitled to recover. Such is our law. [Pratt v. Conway, 148 Mo. 291, 1. c. 299; St. Louis v. Babcock, 156 Mo. 154.] And such seems also to be the law of Kansas, [Lindley v. Railroad, 47 Kan. 432; Railroad v. Hartman, 49 Pac. 109.] And in such case the judgment is not open to collateral attack on the suggestion that the court erred in its opinion. We will, therefore, take this Kansas judgment at its full face value as we would if it had been rendered by one of our own courts.

But it is not the doctrine in this State that every possible issue that might have been tried under the pleadings in a given case is conclusively presumed to have been tried and the matter become *res adjudicata*. Only the matters that were actually considered by the court are settled by the judgment. For our rulings on this point see cases cited in the brief for respondents.

The evidence shows that the only point decided by the Kansas court was that a mere agent holding the mortgage and notes for collection for his principal could not in his own name maintain an action of replevin for the chattels mortgaged. The record shows that Tootle, Lemon & Co. made application for leave to come in and interplead for the cattle, but that their application was denied. That ruling only meant that Tootle, Lemon & Co. could not litigate with Buckingham in that case. There was, therefore, no decision affecting the plaintiffs' title to the cattle, and none affecting that of Buckingham, except that the Bohart Commission Company, who had no title to the cattle, was not entitled to take them out of his possession. There was no adjudication in that suit of the question of the title of these plaintiffs to the cattle.

IV. We come now to the last and serious question in the case, that is, has a court of equity the power to grant the plaintiffs relief against the collection of the $6,000 money judgment in Kansas? The Bohart Company is insolvent; but the judgment is good against

the sureties on the replexin bond; these plaintiffs are obliged to indemnify those sureties for their loss; therefore, if the defendants collect the judgment they in effect collect it from those plaintiffs.

From the whole record in the case we have no hesitation in holding that the 200 head of cattle in question belonged to the plaintiffs in this suit and that they were fraudulently taken away by the man under whom these defendants claim. Now by an untoward conjunction of affairs the defendants are in a position, if left free to execute their Kansas judgment, to, in effect, make these plaintiffs pay for their own cattle and that too to those who derive their only title from the man who fraudulently deprived the plaintiffs of the cattle.

It cannot be said that there was any fraud perpetrated in the concoction of the judgment, because that judgment fell into the hands of the defendant in that case without any action on his part; the only activity displayed by him was in the transference of it after it was rendered.

The plaintiffs have skillfully woven into their bill the idea that they are invoking the power of the court of equity to trace their cattle into the money for which they were sold in St. Joseph and which they bring into court as a trust fund as the subject of the litigation. But the defendants just as skillfully decline that issue by disclaiming any interest in that fund; they are perfectly willing for the plaintiffs to have that money and only ask that they be let alone to collect their Kansas judgment according to its tenor and effect. That is the point in the case. If equity is powerless in the premises, if it cannot restrain the defendants in the collection of that judgment, then justice is defeated in this case by the forms of law.

In the exercise of its jurisdiction to restrain a party in the collection of a judgment at law on the ground of fraud the equity court has always held that it would consider only the charge of fraud in obtaining the judg-

ment, not of fraud in the cause of action, or fraud in the form of perjury in the evidence by which it was established, and the reason given was that the law court which tried the case was competent to judge if there was fraud in the cause of action or perjury in the evidence.

This is not a cause, however, in which the plaintiffs are assailing the judgment; it is a case in which the judgment stands in the place of the cattle, and parties who are not entitled to the cattle are in a position if left alone at law to enforce it against those to whom the cattle rightfully belong.

Suppose the cattle had been kept in Kansas to abide the judgment in the replevin suit and when the judgment was rendered they had been turned over to Buckingham and he had turned them over to these defendants, is there any doubt but that these plaintiffs could have recovered them?

But the cattle were not left there; they were shipped away by Bohart and there is nothing left in Kansas to represent them but the $6,000 judgment. Is not that judgment, therefore, in the eye of equity, the cattle?

If the cattle had been put into the possession of the sureties on the replevin bond in Kansas to hold for their indemnification, and if, when the judgment was rendered, they had delivered the cattle to Buckingham in satisfaction thereof, the plaintiffs in this suit could have recovered them from him in an action at law, or if the plaintiffs could have shown that delivery to him would jeopardize their remedy at law they might have had direct relief in equity. And in such case if the sureties had made way with the cattle so that they did not have them to respond to the judgment and had paid that money alternative, the plaintiffs could have recovered the amount from him, or before such payment, upon a showing that he was insolvent, could have enjoined the payment to him. Thus in any view of the

case the money judgment, in the absence of the cattle, is the alternative of the cattle. And the defendants stand in no better light than Buckingham, under whom they claim, stood; the judgment was transferred to the Central Savings Bank to secure the old debt and without present consideration, and these defendants bought the assets of the bank after this suit was begun.

The fact that these cattle were shipped from Kansas by Bohart and sold in St. Joseph and the money paid into the plaintiffs' bank does not make the situation different from what it would have been if the cattle or their price had never come into the plaintiffs' hands, because if they have that judgment to pay in Kansas it means, in effect, turning the money they have received and more besides over to these defendants, Buckingham's assignees.

Our conclusion is that the Kansas judgment represents and stands for the cattle, and as these plaintiffs as against these defendants would be entitled to the cattle, so they are entitled to that judgment and defendants have no right to collect it.

As to the plaintiffs' appeal, there is no necessity to discuss it. Since it conclusively appears that Buckingham has sold all of his interest to these other defendants a judgment against him would be of no consequence.

The judgment of the circuit court is affirmed.

All concur.