## J. A. MEEKS et al., Respondents, v. CLEAR JACK MINING COMPANY, Appellant.

**Springfield Court of Appeals, January 3, 1910.**

1. **REPLEVIN: Practice: Pleading: Substitution of Parties Plaintiff: Term Bill of Exceptions.** An amended petition was filed in a replevin suit in which petition the names of three plaintiffs were omitted, including the name of the plaintiff who made the affidavit, and three new names were added as plaintiffs. Objections were made to the amended petition at the time, which were overruled but defendants did not save their exceptions by a term bill of exceptions and afterwards answered. At the trial at a subsequent term two years later, and in another county, after the jury was empaneled defendants objected to further proceedings until the original plaintiffs who had furnished the bond and made the affidavit had returned the property. The trial court, before passing on this motion, asked that it be made in writing. This was not done. *Held,* that the trial court was justified in overruling the motion, and that the objections to the amended petition were waived by failure to file a term bill of exceptions.

2. ———: **Mines and Mining: Mingling Property.** Where the evidence shows that the defendant knew that it was mining ore belonging to plaintiff and mingled it with ore belonging to defendant, the plaintiff had undoubted right to maintain replevin for all of it.

3. ———: ———: **Right of Owner to Replevin Ore.** The fact that the ore was at one time part of the real estate and that when it was in the ground in its natural state it was mixed with dirt and rock and had to be loosened and carried to the surface and cleaned and prepared for market, does not deprive the owner of the land from which it was taken of the right to replevin it from the wrongful taker.

4. ———: ———: **Parties: Title of Lessee to Ore Under Mining Lease.** Where a mining company under a lease permits other parties to mine the land under rules and regulations which expressly provide that the ore mined shall remain the absolute property of the company, such other persons were licensees only and had no such interest as to make them necessary parties plaintiff in a replevin suit to recover ore wrongfully taken from said leased property.

5. ———: ———: **Ore Wrongfully Mined: Right of Lessee to Maintain Replevin.** Under a mining lease to persons, their heirs, assigns, etc., a tract of land was leased for twenty years, and the lease contemplated that the lessees should mine the ore and sell it, and out of the proceeds pay a certain per cent. thereof as a royalty or rent. *Held*, that under the lease the relation of landlord and tenant was created, that the lessees had an exclusive right to mine such land, and such an interest in the ore as to entitle them to maintain replevin for ore wrongfully mined by trespassers.

6. **EXECUTORS AND ADMINISTRATORS:** **Right of Administrator to Lease Mining Land on a Royalty.** An administrator, under a proper order of the probate court, has a right to lease mining land belonging to his decedent's estate on a royalty.

7. **PLEADING: Denial of Copartnership Must be Verified.** Where the petition alleges that the plaintiffs are copartners, and no affidavit is filed denying the existence of a copartnership, the evidence does not have to show the separate and distinct interest of each party plaintiff.

8. **APPELLATE PRACTICE: Judgment for Right Party.** Where the equities of the case are with a certain party, it should be the duty of the court to try to decide the cause in favor of the party really entitled to the victory, where it can be done without violation of those lines of procedure authorized and recog-

nized by law, and which experience has shown to be wise and necessary provisions.

9. **EVIDENCE: Depositions.** Depositions taken at a time when a person is not a party to the suit cannot be used against that person after he has been made a party.

Appeal from Barton Circuit Court.—*Hon. Samuel Davis,* Judge.

AFFIRMED.

*James J. Hitt* and *Halbert H. McCluer* for appellants.

(1) The court erred in permitting the plaintiffs to proceed to trial without first returning to defendants the ore involved in the litigation. Shoe Mac. Co. v. Rambon, 210 Mo. 631; Hoehenthal v. Watson, 28 Mo. 360; White v. Vanhoutin, 57 Mo. 577; State ex rel. v. Dunn, 60 Mo. 64; Manley v. King, 40 Mo. App. 531; Clinton v. Stovall, 45 Mo. App. 642; R. S. 1899, sec. 4465. (2) The heir and not the administrator of R. H. Branch, deceased, should have been a party. Chambers Admr. v. Wright's Heirs, 40 Mo. 482; Hall v. Bank, 145 Mo. 424. (3) The court erred in admitting the depositions taken prior to the filing of the amended petition. Leslie v. Coal Co., 110 Mo. 31; Bank v. Thayer, 184 Mo. 61; Hendricks v. Calloway, 211 Mo. 558; Parsons v. Parsons, 45 Mo. 265; Adams v. Raigner, 69 Mo. 363; Borders v. Barber, 81 Mo. 636; Plow Works v. Ross & Co., 74 Mo. App. 437. (4) The court erred in finding the issues in favor of the plaintiff. Deyerle & Porter v. Hunt, 50 Mo. App. 546; Hall v. Bank, 145 Mo. 424; Chitwood v. Zinc Co., 93 Mo. App. 225; Mahoney v. Smith, 7 Mo. App. 578; Hamilton v. Clark, 25 Mo. App. 428; Gossett v. Drydals, 48 Mo. App. 430; Huff v. Henry, 57 Mo. App. 341; Kauffman v. Schilling, 58 Mo. 218; Gray v. Parker, 38 Mo. 160; Groff v. Belch, 62 Mo. 400; Austin v. Coal Co., 72 Mo. 535; Brown v. Stover, 66 Mo. 435; Rochester v. Mining Co., 86 Mo. App.

447; Arnold v. Bennett, 92 Mo. App. 156; Raynolds v. Hound, 55 Fed. 783; Gastride v. Autley, 58 Ill. 210; Shepherd v. McColmank, 38 Hun 37; Gillette v. Tregemyer, 4 Wis. 343; Beardsley v. Gas Co., 96 Pac. 859.

*Thomas & Hackney* for respondents.

(1) The law requires the motions for the return of the property to be in writing and seasonably filed, and if made *ore tenus* only, they are properly disregarded. R. S. 1899, secs. 640, 641; White v. Railroad, 202 Mo. 539; Lynch v. Railroad, 208 Mo. 44. (2) Defects in the affidavit and bond are not jurisdictional and cannot affect the judgment. Ead's Admr. v. Stephens, 53 Mo. 92; Bingham v. Morrow, 29 Mo. App. 448; Land Co. v. Jeffries, 40 Mo. App. 362; Shoe Mach. Co. v. Ramlose, 210 Mo. 652. (3) By filing its answer to the amended petition and proceeding to trial on the issues joined, the appellant waived any objection it may have had to the amendment. Scoville v. Glassner, 79 Mo. 449; Ward v. Pine, 50 Mo. 38. (4) Under this lease and the taking possession thereunder by the plaintiffs, they acquired an interest in the land itself and all the ores extracted from the land whether by the plaintiffs, their sublessees or licensees, or by strangers or trespassers, during the term of the lease. Kirk v. Mattier, 140 Mo. 23; Hobart v. Murray, 54 Mo. App. 249; Ganter v. Atkinson, 35 Wis. 48; 9 Morrison Mining Rep. 13; 2 Snyder on Mines, secs. 1164, 1394; Barker v. Dale, 8 Morrison Mining Rep. 597; Austin v. Coal & M. Co., 72 Mo. 535; 1 Taylor on Landlord and Tenant (8 Ed.), sec. 178; 18 Am. and Eng. Ency. (2 Ed.), 453. (5) The plaintiffs had the right to maintain replevin to recapture the ores. Barringer & Adams on Mines and Mining, 689; White on Mines and Mining, secs. 567, 569; 1 Taylor on Landlord and Tenant, sec. 178; Bainbridge on Mines, pp. 3, 494; Hail v. Reed, 15 B. Monroe (Ky.) 479. (6) The instrument under which the plaintiffs held the land is a mining lease and

not a license. Kirk v. Mattier, 140 Mo. 23; Boon v. Stover, 66 Mo. 430; Doe d. Hanly v. Wood, 2 B. & Ald. 736; s. c., 9 Morrison Mining Rep. 182; 2 Snyder on Mines, secs. 1164, 1394; Ganter v. Atkinson, 35 Wis. 48; 9 Morrison Mining Rep. 13; Massot v. Moses, 3 So. Car. 168; 16 Am. Rep. 697; 8 Morrison Mining Rep. 607.

GRAY, J.—On the 18th day of November, 1903, there was filed in the office of the clerk of the circuit court of Jasper county, Missouri, a petition and affidavit in replevin in which J. A. Meeks, M. G. Branch, administrator, M. G. Branch, Mary A. Cobb, A. L. Johnson, Thomas Morgan, Harry Tamblyn, R. E. Sanford and Corrie Cole, were named as plaintiffs and appellant and F. O. Chesney, defendants. The affidavit was made on a separate paper and signed and sworn to by Harry Tamblyn. A bond was given and the writ of replevin issued, and under it, the sheriff took the property from the defendants and delivered it to the plaintiffs. On the 15th day of February, 1904, the defendants applied for and obtained a change of venue, and the cause was transferred to Barton county, Missouri, where it was tried. On the 12th day of September, 1904, the plaintiffs filed an amended petition in the Barton County Circuit Court in which the names of Harry Tamblyn, R. E. Sanford and Corrie Cole, were omitted, and the following names added: Allen M. Cobb, Cynthia M. Page, J. A. Gaddis and Eli C. Gaddis. On the same day the defendants filed an answer to the amended petition. On September 13, 1904, the plaintiffs filed a reply which was a general denial. There was a trial on September 13, 1904, before a jury, in the Barton County Circuit Court, but the result thereof, we do not know. The cause came on again for trial November 6th, 1907, resulting in a judgment in favor of the plaintiffs, from which the Clear Jack Mining Company appealed.

After the jury was empaneled to try the case in 1907, the defendants objected to further proceedings until an order had been made directing the original plaintiffs, who filed the affidavit and furnished the bond, to return the property, for the reason that the amended petition omitted some of the original parties and substituted others therefor. The court, before passing upon this motion, asked counsel to put the same in writing. This was not done and the court ordered the trial to proceed.

The evidence disclosed the fact that the appellant, Clear Jack Mining Company, was mining for lead and zinc ore on a tract of land adjoining a tract upon which the plaintiffs, or a part of them at least, had a mining lease. It was claimed by the plaintiffs that they owned the mining lease and had a right to mine the land; that the defendants wrongfully and knowingly entered upon their tract of land, and removed the ore therefrom. The appellant claimed that if any ore did come from the land of the plaintiffs, it was not taken knowingly or intentionally, and that it mined other parts of its own land and all ores were mixed and run together so that it was impossible to separate or distinguish the ore that came from plaintiffs' land from the appellant's land. As above stated, the tracts were adjoining and shafts had been sunk and mining carried on under ground. The appellant had cut a drift from its land, extending east under the land on which plaintiffs claimed to have the lease.

The evidence shows that underground surveys had been made previous to the time the ore in controversy had been loosened from its natural state in the ground and hoisted to the surface and cleaned for market. These surveys were made by the county surveyor and his deputy, and at the time the appellant had a ground boss in charge of its underground working; that this ground boss knew when these surveys were made, and knew

that the appellant was cutting across the line and taking ore from land in which it had no interest.

The evidence shows that the president of the appellant company knew these surveys were being made, but made no inquiry of his ground boss and took no steps to ascertain where the true lines were. The said ground boss testified that the president of the appellant company cautioned him to be careful about the employment of hands and get men who would not afterwards be employed by the respondents.

The preponderance of the evidence shows that the ore in controversy was taken from this leased land of respondents. While the appellant had some testimony that only about half of the ore came from this land, yet the undisputed fact is, that as soon as this suit was instituted, the appellant shut down its mine and did not operate any more. Its action in so doing can only be explained upon the theory that as soon as it was stopped from wrongfully taking the ore from the adjoining land, it had none to mine.

The fact that the president of the company knew that these surveys were being made, and took no steps to ascertain the line between the land of his company and the adjoining land, shows that he had every reason to believe that his company was taking something that did not belong to it. It is a well known fact in all the mining districts that disputes often arise as to the true boundary line between the different mining rights, and that the county surveyor is sent for to make his survey and establish the true line, and a mistake by even one foot in ascertaining or establishing the true line, may mean a loss of quite a sum of money. So when the county surveyor came to make the surveys between the two tracts in controversy, the fact that the president of the appellant company did not take steps to ascertain and determine the true line between the parties, shows that he must have known that his company was already over the line mining where it had no right.

Under these circumstances, if some ore belonging to the appellant was mingled with the ore of plaintiffs so that the same could not be separated, the plaintiffs had the undoubted right to maintain a replevin for all of it. [Blurton v. Hansen, 135 Mo. App. 548, 116 S. W. 474; Cobbey on Replevin, sec. 405; Tootle v. Buckingham, 190 Mo. 183, 88 S. W. 619; Windgate v. Smith, 20 Me. 287; Jenkins et al. v. Steanka, 19 Wis. 126; Jones on Chattel Mortgages, sec. 481.]

It is claimed that the court committed error in proceeding with the trial before an order had been made to return the property because of the change in the parties plaintiffs. There are several reasons why the court committed no error in this respect. First, the court requested counsel to put the motion in writing, and it was not done. White v. The Railroad, 202 Mo. 539, 101 S. W. 14; Revised Statutes, sec. 640.]

The court more than two years before, had permitted the amended petition to be filed. Objections were made to it by the defendants, and they afterwards filed their answer and proceeded to the trial. Whatever error the court committed in overruling the objections to this amended petition, were waived by defendants not saving and filing their bill of exceptions thereto. [White v. The Railroad, 202 Mo. l. c. 557, 101 S. W. 14.]

The parties waited for over two years after this amendment was made and after trial had taken place on the amended petition, and they had announced ready for another trial and the jury was empaneled, then objected to the court proceeding with the case until the property had been redelivered to them. The suit was commenced in Jasper county and a trial was then about to be held in another county. The litigants were ready and witnesses had been taken from their ordinary avocations to testify at this distant place. It seems to us that the court was justified in overruling the motion upon this ground alone. In this connection,

it will not be overlooked that in making the objections, counsel for appellant conceded that after the property had been returned, then the suit as between the new parties, might proceed in the ordinary course, the possession of the property awaiting final result of the suit, unless a new affidavit and bond were given. The cause was then called for trial on the merits and independently of the affidavit and bond, as the petition stated a good cause of action, no objection on account of the insufficient, or failure to have a proper, affidavit and bond, interfered with the trial upon the petition that both parties had announced ready for. [Keim v. Vette, 167 Mo. 389, 67 S. W. 223; Stave Co. v. Whitson, 34 Mo. App. 1. c. 628.]

What we have just said applies to the action of the court in permitting the amended petition to be filed. This was done in September, 1904, and an answer was filed and trial had, and no exceptions to the action of the court in permitting such amendment ever saved by bill of exceptions. And no complaint was ever made until the parties had announced ready for trial, and then the objection was not made that the amended petition could not be filed changing the parties plaintiffs, but only that further proceedings in the cause should cease until the property had been returned. If there is anything left of the law of waiver, then certainly under the undisputed facts of this case, the appellant waived all of its rights to complain of the action of the court in permitting parties plaintiffs to be changed.

The fact that the ore at one time was a part of the real estate, and that when it was in the ground in its natural state, it was mixed with dirt and rock and had to be loosened and carried to the surface and cleaned and prepared for market, does not deprive the owner of the land from which it was taken, of the right to replevin it from the wrongful taker. [Cobbey on Replevin, sec. 354; Baker v. Campbell, 32 Mo. App. 529;

Johnson v. Elwood, 53 N. Y. 431; Blurton v. Hansen, 135 Mo. App. 548, 116 S. W. 474.]

The action of the court in permitting certain depositions to be read is assigned as error. The amended petition as above stated, was filed on September 12, and the depositions were taken on the same day and filed on the 13th. The testimony does not show whether they were taken before or after the petition had been amended adding new parties. The first trial was on September 13th, and the depositions were taken and used in that trial without objection. It is true that depositions taken at a time when a person is not a party to the suit cannot be used against that person after he has been made a party. In this case, nothing of the kind was admitted. There is nothing to show that the depositions were taken before the amended petition was filed, and in any event, the person now raising the objection, was a party to the suit at the time the depositions were taken, and as to such party, the depositions were admissible. [Hendricks v. Calloway, 211 Mo. 536, 111 S. W. 60.]

It is urged that the evidence shows that the Bailey Mining Company had permitted other persons to mine on the tract of land from which respondents claim appellant took the ore, and that such persons were interested in the possession of the ore, and as they were not made parties to this suit, the plaintiffs have not shown themselves to be the absolute owners of the property, and therefore not entitled to maintain replevin.

The Bailey Mining Company, after it acquired the lease from the owner of the fee, posted rules and regulations, as provided in sec. 9866, stating the terms upon which persons would be permitted to mine upon the company's property. These rules and regulations were offered in evidence, and among them we find the following: "No right, title or interest in or to any land,

ores or minerals, shall be acquired or owned by persons so mining, and it is hereby expressly stipulated that all ores or minerals, whether the same remain in the ground or be severed or removed therefrom, are and shall remain, in any event, the absolute property of said company, and the money paid to miners is not, and shall not, in any event, be considered as price paid for minerals or ores, but is, and in every event shall be, only compensation for labor and services rendered by the said miners in working said mining lease."

Under the law and these rules, the persons mining under the Bailey Mining Company were licensees only, and had no interest in the ore or any right to the possession of the land from which the same was taken. [Chynowitch v. The Granby Mining & Smelting Co., 74 Mo. 173; Lytle v. James, 98 Mo. App. 337, 73 S. W. 287; Rochester v. Gates City Mining Co., 86 Mo. App. 447; Lowe v. Amer. Zinc Co., 89 Mo. App. 680.]

It will be noticed that the rule above quoted provided, "that all ores or minerals, whether the same remained in the ground or be severed or removed therefrom, are and shall remain in every event the absolute property of said company." The statute authorizes a rule of this kind and it becomes the contract between the parties. The parties mining under these rules, having agreed that the ore in the ground, as well as that severed, remained the absolute property of the Bailey Mining Company, they have no right to the property such as to maintain replevin therefor.

It is next claimed that the court should have sustained the demurrer to the evidence, for the reason that the plaintiffs' claim to the ore is derived through the mining lease offered in evidence, and that this mining lease does not pretend to convey any specific quantity, nor does it convey any ore only such as may be found in the mines, and the plaintiffs never having mined the ore in question, or any portion thereof, had

no title thereto, and were not entitled to the possession thereof.

This is an important point in the case. If, under the terms of the lease, the Bailey Mining Company had no interest in the ore, then that company, or the members thereof, cannot maintain an action of replevin, as this action can only be maintained by a person having a general or special interest in the property replevied. [Gartside v. Nixon, 43 Mo. 138.]

The said mining lease contained the following provisions: "That the party of the first part in consideration of the sum of one dollar to him in hand paid, and of the performance by second parties of the terms and conditions hereof, does by these presents demise and lease unto said second parties, their heirs, personal representatives and assigns, the following described land in Jasper county, Missouri, to-wit:   The south half of the southeast quarter of the northwest quarter of section eight (8), and also the east half of the southwest quarter of the northwest quarter of section eight (8), in township twenty-nine (29), of range thirty-two (32). . . . This lease is for mining purposes only, and all uses of said land not inconsistent with thorough and proper mining thereof as herein required are hereby reserved to the party of the first part. Said party shall at all times have the right to go upon said land and into all shafts and drifts therein, to see that the terms of this lease are complied with. Second parties shall have the right to erect and place on said lands all buildings and machinery necessary or proper for the purpose of mining and draining said land and preparing the ores for market thereon, and to remove same at the expiration of this lease, except timbers and other things necessary to support the ground and prevent same from caving or falling in.

"Second parties shall pay as rent or royalty seven per cent of the gross market price of all ores, minerals and other valuable substances mined from said land,

said royalty to be due and payable whenever any ores or minerals or other valuable substances are sold.

"Subject to the full performance in good faith, of all the terms and conditions hereof this lease shall be and remain in force for the term of twenty years from this date. Any failure by second parties, their heirs, personal representatives or assigns, in good faith to carry out and perform any of the terms and conditions hereof, shall end and determine this lease and the first party may so declare and re-enter upon said premises and take and hold complete possession thereof."

The lease was properly acknowledged and filed for record in the office of the recorder of deeds for Jasper county, Missouri. It will be noticed at once, that the lease is not only made to the second parties, but to their heirs, personal representatives and assigns, and that it is not a sale of the ore, but an absolute lease of the real estate for the term of twenty years. The lease contemplates that the lessees shall mine the ore and sell it, and out of the proceeds pay the royalty or rent of seven per cent.

In Kirk v. Mattier, 140 Mo. 23, 41 S. W. 252, in an opinion by Judge GANTT, the court held that, "an instrument that demised and leased a certain tract of ground for mining purposes only, for a period of ten years, and gave to the second party the right to possession and to erect gates and other necessary buildings thereon, is held to be a lease and not a license," and the court held, the grant to dig and mine the zinc and lead ore on the land for the period specified therein, was a lease of the land so denominated and so understood, and that it was such an interest in the real estate, that in a proper case ejectment would lie for the land and the estate acquired thereby. In that case, as here, it was urged that the instrument was a mere mining license, and to that claim the court said: "We cannot agree to such a view. By every test known to the law, this instrument is a lease."

The St. Louis Court of Appeals, in Hobart v. Murray, 54 Mo. App. 249, while holding that such an instrument was not a lease because it had no determining period, yet it was held to be more than a license to mine, and that case is an authority supporting respondents' view of this point.

In Austin v. Mining Co., 72 Mo. 535, our Supreme Court declares the rule to be that such an instrument, while it is not an absolute grant of the ore in the land, yet when the lessee has entered, the estate becomes vested in him, and he is then possessed, not properly of the land itself, but of the term for years.

In Lacey v. Newcomb, 63 N. W. 704, the Supreme Court of Iowa declared that an agreement whereby a party had the exclusive right to mine coal under certain land for twenty years, and to use in connection with the mine five acres of the surface of the land to erect buildings thereon, and to build and operate railroads and flow water thereover, for a certain royalty per ton of coal mined, payable as rent for all the privileges granted, created the relation of landlord and tenant.

It is said in Haywood v. Fulmer, 32 N. E. 574: "A lease may not only confer upon the lessee the right to the occupancy of the leased premises, either generally for the time limited, or for some specific purpose, or in some specific manner, or the right to occupy and cultivate and to remove the products of cultivation, but it may confer upon him the power to occupy and remove a portion of that which constitutes the land itself. Familiar and common examples of such leases are those authorizing the lessee to quarry and remove stone, to open mines and remove ores, minerals, or to sink wells for procuring petroleum and natural gas. The power to execute leases for such purposes, and the fact that the instrument by which such interest in land is granted may be in all essential particulars a lease, will not be questioned."

Manifestly there can be no valid reason why a lease may not confer upon the lessee the right to remove a portion of the soil or of sand and gravel found upon the surface of the land leased, as well as to remove stone, coal, zinc, and lead found either upon the surface or beneath it.

By reading the instrument, it will be noticed that it confers present rights; it is assignable; it is for a fixed period; it provides for a regular rental, and the right to mine is exclusive in the lessees for the period fixed in the lease; the rent or royalty is by express terms, payable at certain times, and we are satisfied that under the provisions of this instrument, and during the twenty year period named therein, no one but the lessees and their assigns had any right to mine said premises or any part thereof. These things being true, it must be conceded that the lessees had the right to the possession of the ore in the ground and after it had been cleaned, and that the landlord had no interest therein, and had no right to interfere with the tenant's possession thereof. [Lacey v. Weaver, 49 Ind. 373; Dickson v. Nichols, 39 Ill. 372; Daniels v. Brown, 34 N. H. 454; Cobbey on Replevin, sec. 28; Coon v. Male, 39 Mich. 434.]

Where, by the terms of the lease, the tenant is to thresh the wheat crop and to deliver to the landlord a certain share in the bushel, the tenant has the right to possession of the wheat and may maintain replevin therefor, even against the landlord. [Cunningham v. Baker, 84 Ind. 597; Cobbey on Replevin, sec. 36.]

Appellant has called our attention to Boone v. Stover, 66 Mo. 435; Rochester v. Gate City Mining Co., 86 Mo. App. 447; Chitwood v. Lanyon, 93 Mo. App. 225; Arnold v. Bennett, 92 Mo. App. 156. The three cases above cited from the Courts of Appeals, are all cases where the parties were mining under rules and regulations, and as we have said, the relation of landlord and

tenant did not exist therein, but the parties mining were simply licensees.

In Boone v. Stover, above cited, the court held the parties licensees, because the contract under which they mined required them to deliver weekly all mineral raised on the land to the party under whom they were mining. They were not authorized to sell or dispose of the ore, but simply to mine and turn it over.

The other case relied on by appellant is Austin v. Huntsville Coal Co., 72 Mo. 535, and by a reading of that case it will be seen that it is not an authority for the appellant, but is clearly against it.

From a careful reading of the authorities above cited, and others, we are of the opinion that the instrument is a lease, and that by its terms, the relation of landlord and tenant were created. The lease was dated July 7, 1898, and therefore, there was an unexpired term of fifteen years when the alleged wrong was committed. The mining by the appellant had shown that valuable ore was along the west line of respondents' property, and there can be no doubt but what, within the term of the lease, the respondents, or their assigns or lessees, would have removed the ore. These things all being considered, we are of the opinion that the right to maintain the action of replevin for the ore was in the lessees at the time this suit was instituted.

Another assignment of error is, that the administrator of R. H. Branch, was not an owner of the property, or had any interest therein; that upon the death of R. H. Branch, his interest vested in his heirs, and not in the administrator.

There was introduced in evidence, an order of the probate court of Jasper county, made in 1901, directing the administrator to take possession of the real estate and rent it. Sec. 130, Revised Statutes 1899, provides that "no administrator shall rent or control real estate of the deceased, unless the probate court shall be satisfied that it is necessary to rent said estate for the pay-

ment of debts, and make an order of record, requiring such administrator to take possession of and rent the same, and upon such order, the administrator may prosecute and maintain any action for the recovery of such real estate in the same manner and with like effect as the intestate might have done in his lifetime." This section of the statute not only provides for the administrator renting the property but seems to place him, when the order is made, in full charge thereof, with the right to maintain any action for the recovery of the same that the intestate might have maintained in his lifetime. This is the construction placed upon the statute by the Supreme Court. [Hall v. Bank, 145 Mo. 418, 46 S. W. 1000.]

The petition alleged in this case, that the administrator and the other parties named, composed a copartnership known as the Bailey Mining Company, and that this company was the owner of this ore. There was no affidavit filed denying the existence of the copartnership, as alleged.

The appellant has argued in his printed brief, and at the oral hearing of the case in this court, that the statute in regard to administrators renting the real estate, should only be construed to mean farm rentals or rentals for business and residence purposes, and not to include the right to lease for mining purposes.

The Supreme Court of Iowa, in Lacey v. Newcomb, above cited, in construing the word "rent," says: "Now our statute allows the landlord a lien for 'rent.' Rent has been defined to be a 'certain profit issuing yearly out of lands and tenements.' Rent is a compensation for the use of lands demised, and is treated as a profit issuing out of the land and tenements. [2 Woods, Landlord & Tenant, sec. 445.] 'A royalty payable upon the stone or ore taken from the land, or upon brick made from the earth thereon, is held to be a rent that may be distrained for, although the soil is gradually exhausted, and the royalty is not paid out of the

renewing produce of the land.' [2 Woods, Landl. & Ten., 445.] 'Rent may be in the form of royalty.' We have held rent to be a 'certain profit, either in money, provision, chattels, or labor issuing out of lands and tenements, in retribution or return for their use.' [Merrit v. Fisher, 19 Iowa 357.]"

In Raynolds v. Hanna, 55 Fed. 799, it was held that no technical form of words was necessary to create a lease, and that it was not material that the rent to be paid on the lease was called royalty, which was, perhaps, the more appropriate word where rental was based upon the quantity of coal or other mineral to be taken from the mine. It has also been held that, an agreement between the owner of the stone quarry and another person, that the latter should work the quarry and sell the stone and pay a part of the proceeds to the owner, creates the relation of landlord and tenant.

The authorities are well collected in Lacey v. Newcomb, and the reasoning of that case is sound, and there is no reason for holding that if a man dies owning a sand bank, stone quarry, coal or zinc mine, that our statute does not authorize the probate court to order the administrator to lease the same for the purpose of obtaining money with which to pay the debts. The renting of the same for a year or two, might provide sufficient money with which to pay all the debts, and thereby preserve the fee for the heirs or legatees.

Finally the appellant asserts that J. A. Gaddis was not a proper party plaintiff, as the evidence shows he had no interest in the property. In addition to the fact that it was alleged in the petition that he was a member of the copartnership known as the Bailey Mining Company, and the answer did not deny the same as required by the statute, it cannot be said from the evidence that he had no interest. There were assignments of certain interests in the lease, and one of these was an assignment of an undivided one-eighth interest to J. A. and Eli C. Gaddis. This assignment was filed

for record in the office of the recorder of deeds of Jasper county, Missouri, on the 7th day of October, 1898, and at the time the suit was commenced, the record interest of said J. A. Gaddis still stood just as it did when this assignment was filed for record. It is true the testimony showed that he had made some arrangements with others of the plaintiffs to collect his royalty and look after his interest, but there was no assignment of record or otherwise offered in evidence, showing that he had transferred the interest he acquired in the lease by proper assignment duly recorded. And when respondents were trying to show the terms of this arrangement, appellant's counsel objected because it was shown to be in writing and parol testimony was not proper, and the court sustained the objection.

As said in the former part of this opinion, the merits of the controversy are with the plaintiffs. The appellant mined where it had no right to, and at this time makes no serious claim to the ore, but simply contends that the plaintiffs ought not to recover, because of certain technical objections to their title and their method of procedure.

When the equities of a cause are with a certain party, it should be the duty of the court to try to decide the cause in favor of the party thus really entitled to the victory. Of course this means that persons must pursue the lines of procedure authorized and recognized by law in securing their just demands, and to ignore these methods that experience has shown to be wise and necessary provisions, mistakes and errors will be made, but after a careful examination of all the objections made by the appellant, we are satisfied that no errors material to the issue were committed by the trial court, and the judgment being for the right party, we will not disturb it. It is therefore ordered that the judgment of the trial court be affirmed. All concur.