## McFadden's Estate

*Nesbit & Wasson,* for petitioner.

McCRACKEN, P. J., June 20, 1940.—Jacob Ambrose McFadden died July 8, 1939, possessed of personal property of the value of $764.15. These assets were increased $200 by the payment of death benefits from two fraternal orders of which decedent was a member. He was indebted in the sum of $6,338.76 which has been reduced by the satisfaction of a judgment of $5,100.

He was also the owner of real estate situate in Irwin Township, Venango County. Oil and coal are produced from this property and from this source decedent received royalties. The executor has presented his petition asking that he be granted the right to collect these royalties and apply them towards the payment of decedent's debts. A rule to show cause was awarded.

A correct solution of this question involves a construction of section 14 of the Fiduciaries Act of June 7, 1917, P. L. 447, 20 PS §503, providing as follows:

"Rents of real estate accruing after the death of the owner of such real estate, who shall die on or after the day on which this act shall go into effect, shall be assets for the payment of debts of such decedent whenever the personal estate shall be insufficient therefor. Whenever the personal estate of such decedent shall appear to be probably insufficient for the payment of debts, the orphans' court having jurisdiction of the accounts of the executor or administrator shall, upon application of any creditor of the decedent, or upon application of the executor or administrator or of any other person interested, authorize and direct the executor or administrator to collect such rents for such period as the court shall fix."

It is evident that this court has no authority to grant the prayer of the petition unless rents can be construed so as to include royalties. Prior to the enactment of the Fiduciaries Act of 1917, supra, rents accruing from real estate after the death of the owner belonged to the heirs of decedent and were not available for the payment of debts. Often this inability to use the rents resulted in a forced sale of decedent's real estate with a consequent loss to those entitled thereto, either by will or descent. Undoubtedly, in passing the act cited, the legislature had in mind just such a situation and used the word "rents" as including any stated or relatively definite return or income from real estate. Rent in its larger sense has been defined "a reasonable return from real property; in the popular sense, the compensation paid for the use of any kind of property, movable, or fixed; the payment by one for the temporary use of property; and its usual and ordinary meaning is the amount to be paid for the use and occupation of the premises": 54 C. J. 382, sec. 3.

"Strictly the term 'rent' refers to the compensation received by a landlord for the use of land leased; and

hence it is a profit out of lands and tenements": 54 C. J. 382, sec. 4.

Royalty is thus defined: "In oil and gas leases, a share of the product or profit reserved by the owner for permitting another to use the property; the amount reserved or the rental to be paid the original owner of the whole estate; the compensation for the privilege or rights created by the lease; the compensation provided for the privilege of drilling for oil and gas, and consists of a share in the oil and gas produced under existing leases; the share of the product or profit paid to the owner of the property. As applied to an existing lease, a share in the oil and gas produced, but the term does not include a perpetual interest in the oil and gas in the ground": 54 C. J. 1106.

"A distinction has been made between what is called 'ordinary rent,' namely, the compensation for the ordinary use of land and that which arises, is derived from, or represents, the corpus of the land, although it is said no suitable terminology has been devised to distinguish the latter from ordinary rent. The term has also been distinguished from 'annuity,' . . . 'royalty,' . . . but it has also been said that it is often used interchangeably with 'profit,' and 'royalty' ": 54 C. J. 383, sec. 5.

While there are certain definite differences between rent and royalty, both represent the compensation paid for the use of land, and in our opinion the term used in the statute had reference to this characteristic. Manifestly the legislature had in mind the preservation of a decedent's estate, if possible, and in a proper interpretation of the word we must keep in mind this evident purpose. If the income or profits of a decedent's real estate would probably pay his debts in a reasonable time the statute provides a means to accomplish this result.

We are unable to conclude that the legislature intended that the compensation or rent paid to farm a certain parcel of land or to reside thereon should be used in payment of a decedent's obligations and a sum derived from

the products of the same parcel of land or a part of the income therefrom should not be used for the same purpose. The object to be attained was the payment of decedent's debts by applying the income from his land. Thus there was used the larger term "rent."

This view is sustained by the opinion in Pfister Land Co. v. City of Milwaukee, 166 Wis. 223, 165 N. W. 23. While the question involved in the case just cited applied to the income tax statutes the issue was on a par with the one raised here.

A diligent search by counsel for petitioner and also by the writer has failed to disclose any decision in this State dealing with this question. However, the State of Missouri has a statute quite similar in its provisions to the one in effect in this Commonwealth. In Meeks et al. v. Clear Jack Mining Co., 141 Mo. App. 648, 124 S. W. 1084, the act was considered by the Supreme Court. The question raised was whether or not royalties from the operation of a lead and zinc mine were available to the executor to pay the debts of a decedent's estate. On this phase of the case the Supreme Court construed the word "rent" to include "royalty" on the ground that the plain object of the legislation was to "preserve the fee for the heirs or legatees."

We deem further discussion unnecessary and, therefore, make the following order:

And now, June 20, 1940, the rule heretofore awarded is made absolute and the prayer of the petition of the executor of the above estate that he be authorized to collect the rents and royalties accrued and accruing from the real estate of decedent and to apply the same in payment of decedent's debts is granted. This order is to remain in force and effect until sufficient funds have been collected from said rents and royalties to pay said debts in full, not to exceed, however, two years from this date unless said period is extended by order of court upon cause shown.